The question whether an extradited person can be detained by arrest upon civil process, has not been, that I am aware, adjudged.
The learned judge, at General Term, in an able opinion in favor of setting aside the order of arrest, maintained that there was an implied treaty obligation binding upon and enforcible by the courts, not to detain the accused for any act criminal or civil, committed prior to the extradition, except the crime specified in the proceedings. He cited no authorities, but enforced his position by plausible and forcible arguments. I have examined the subject with some care, with a view, if possible, to arrive at the same result, which I regard as eminently just as a principle, but the examination has created doubts of the legal soundness of the position.
It was formerly very much questioned among jurists whether the surrender of fugitives from justice, by one government to another, was a duty or obligation imposed by the law of nations, or depended upon courtesy or comity, which might or not be exercised at the pleasure of each government without cause of complaint. In this country and in England at least it has been substantially settled that no such duty exists, and in practice it is believed that in nearly all countries neither demand or surrender is now made except in obedience to treaty stipulations. (Kent's Com., 38, note d, [11th ed.], and cases cited; Story's Conflict of Laws, § 626, and cases cited; 2 Story on Const., § 1808.)
The defendant, Lagrave, was in fact delivered up under proceedings in pursuance of a treaty between the United States and France, concluded in 1843 and amended in 1845, by which each government agreed "to deliver up to justice" persons accused of certain specified crimes, among which is burglary, "defining the same to be breaking and entering by *Page 113 
night into the mansion house of another with intent to commit felony." The indictment was for burglary in the third degree under our statute, and clearly not within the treaty, but it is not for the defendant to raise this question. The government of France had power to surrender him for any offence, and even if deceived and defrauded, the defendant cannot interpose in its behalf. The question of good faith is for the two governments.
It has been decided in other actions, in favor of parties who were held to have been concerned in procuring the defendant to be brought within the jurisdiction of the court, by the extradition proceedings, in bad faith, for the purpose of arresting him on civil process, that he should be discharged from arrest on the ground that such persons should not receive an advantage through their wrongful acts. (14 Abb. [N.S.], 333, note.) But this rule does not apply to persons not concerned in the trick or device by which the party was brought within the jurisdiction of the court. (Id., and cases cited.)
The other point as to the legal right to detain the defendant for any purpose except the prosecution of the particular offence for which he was given up, presents a different question and is the one passed upon in the negative in the court below.
In the Caldwell Case (8 Blatch. C.C., 131), the prisoner was indicted for bribing an officer of the United States, and pleaded that he was a resident of Prescott, in the Province of Ontario, and Dominion of Canada, and was arrested and brought here under extradition proceedings, in pursuance of the Ashburton treaty, for forgery, to which there was a demurrer on behalf of the government. BENEDICT, J., in delivering the opinion sustaining the demurrer, held, that the prisoner could not raise the point of good faith of the extradition, as that was a question between the two governments, which the court could not investigate, and, upon the other point, he added: "And I cannot say that the fact that the defendant was brought within the jurisdiction by virtue of *Page 114 
a warrant of extradition for the crime of forgery, affords him any legal exemption from prosecution for other crimes by him committed." Mr. Clarke, in his work on extradition, has collected a number of cases bearing upon the point. During the late civil war, one Burley was demanded by the United States, of Canada, upon a charge of robbery committed on board the steamer "Philo Parsons, on Lake Erie." He claimed, before the Canadian authorities, that the act was belligerent in the service of the Confederate States. As he failed to show any commission or authority for doing the act, but only an adoption of the act after it was done, he was surrendered, and, upon a trial in Ohio, the jury disagreed, and he was finally discharged. The case attracted attention in England, upon the suggestion that it was contemplated to put the prisoner on trial for piracy, and the law officers were inquired of as to its legality. They held that if the United States had put him bona fide on his trial for the offence, in respect to which he was given up, it would be difficult to question their right to try him for any other offence, whether within the treaty or not. One answer was: "We admit in this country that, if a man is bona fide tried for the offence for which he was given up, there is nothing to prevent his being subsequently tried for another offence, either antecedently committed or not." It is quite evident that the question was regarded as one of good faith, as the legal obligation claimed in the case could not depend upon whether the prisoner was tried for the particular offence or not. (Clarke on Ex., 90, note.)
In France the question has frequently been considered by the courts, whose decisions have not been entirely uniform.
In one case the decree recited that it was a matter of principle that an accused person should only be tried for the offence for which he was surrendered, except with his express consent. (Clarke on Ex., 169.) Subsequently the minister of justice intervened, and insisted that the courts could not interfere, and had no concern with questions relating to extradition, and that if the question was raised, *Page 115 
they could only suspend proceedings until the government should decide. He said that "a criminal could acquire no right against the justice of his country; the tribunal had nothing to do but to try the facts; it could not take cognizance of the conditions upon which extradition had been granted, except upon a notification from the minister of justice.
The Court of Cassation finally adopted these views, and they may be regarded as the settled practice of the French courts. (Clarke on Ex., 172.)
These authorities indicate at least the views entertained in this country, England and France, which are, as far as they go, against the position claimed. In none of them is there an allusion to any treaty obligation. If such a provision had been inserted in the treaty it would, of course, have secured to the defendant a legal right of immunity from detention for other purposes. A treaty is a contract and is to be construed upon principles similar to those applied to other contracts. Any thing necessarily implied is as though inserted, but can it be said that there is such an implication of an agreement, on the part of the United States, that the prisoner shall not be detained for any other lawful purpose? It may be conceded that such a provision would be wise and proper, but can it be regarded as inthe treaty? I can find no authority warranting such a conclusion. On the contrary the cases are quite uniform against it. The English parliament has since passed an act to meet the difficulty, (33 and 34 Vict., ch. 52.) It is designated "the extradition act of 1870," and provides that a fugitive criminal shall not be delivered up unless by the law of the foreign country, or by arrangement, he cannot be tried for any but the extradited offence, until he has an opportunity of returning to that country, and the same provision of immunity from prosecution is secured in favor of fugitives delivered to that country. These provisions would have been unnecessary if there existed any such treaty obligation as is claimed in this case. While we appreciate the justice and fairness in the abstract of the principle *Page 116 
adjudged in the court below, in view of the authorities referred to, and in the absence of any legal principle upon which it can rest, we do not feel justified in holding that there is such an implied obligation which can be enforced by the courts, at the instance of the defendant, as will prevent a prosecution for other offences or civil liabilities. The right of exemption from prosecution, if it can be said to exist at all, is based upon the good faith of the government, which is necessarily uncertain, and is a political and not a judicial question. Congress doubtless has power to pass an act similar to the English act referred to, as the whole subject of extradition is confided to the federal government. It has exercised this power by passing an act to protect fugitive criminals from lawless violence. (15 U.S. Stat. at Large, 337, § 1.) That these provisions ought to be extended to protection from other prosecutions or detention I do not doubt, but until this is done by the law making power, by treaty or statute, we feel constrained to hold that the courts cannot interfere.
As the present plaintiffs were not concerned in the alleged fraud of procuring the defendant to be brought within the jurisdiction of the State, we can see no ground for setting aside the order of arrest.
The order of the General Term must be reversed, and that of the Special Term affirmed.
All concur except GROVER and FOLGER, JJ., dissenting.
Ordered accordingly. *Page 117