## Case No. 15,573.

### UNITED STATES v. LAWRENCE.

[13 Blatchf. 295.] [1]

Circuit Court, S. D. New York. March 28, 1876.

CRIMINAL PLEADING — FIRST FAULT IN PLEADING — EXTRADITION — IMMUNITY FROM TRIAL FOR OTHER OFFENCES — PRESIDENT'S ORDER — EFFECT OF.

1. L., to an indictment for forgery, pleaded want of jurisdiction in the court, setting up that he was arrested in Ireland, upon a requisition made by the United States, and was charged with the crimes of forging and uttering a bond and affidavit; that, in pursuance of the British extradition act of August 9, 1870 (33 & 34 Vict. c. 52) by arrangement between the United States and Great Britain, it was agreed, in respect to his surrender, that he should not, until he had been restored, or had an opportunity of returning, to the British dominions, be detained or tried within the United States for any offence committed prior to his surrender, other than the extradition crimes of forging and uttering said bond and affidavit; that, on the faith of said agree-

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

ment, he was conveyed within the United States, under an extradition warrant which recited that ·he was accused of said crimes; that he is sub·ject to be tried for said crimes, and for none other; that the president had directed the district attorney to proceed against him on no charges except those on which he was extradited; that the offences in the indictment are not those on which his surrender was grounded, and not those specified in the said warrant; that he has been held in custody for the crimes specified in said warrant, but was not tried for either of them; and that the court has no jurisdiction to try the indictment, until a reasonable time shall have elapsed, after his trial for crimes specified in said warrant, that he may have an opportunity to return to the British dominions. To this plea there was a replication; to the replication there was a rejoinder; and to the rejoinder there was a general demurrer. *Held,* in a criminal case, on a demurrer to a pleading, judgment is to be given against the party who has committed the first fault in pleading.

[Cited in U. S. v. Rauscher, 119 U. S. 425, 7 Sup. Ct. 243; Re Fitton, 45 Fed. 472.]

[Disapproved in Re Hope (Ex. Ch.) 10 N. Y. Supp. 30. Cited in Ker v. People, 110 Ill. 632; People v. Eberspacker, 29 N. Y. Supp. 796.]

2. Extradition proceedings do not, by their nature, secure to the person surrendered, immunity from prosecution for offences other than the one upon which the surrender was made.

[Cited in U. S. v. Johnson, Case No. 15.487; Re Miller, 23 Fed. 33; Ex parte Hibbs, 26 Fed. 429.]

[Cited in State v. Stewart, 60 Wis. 590, 19 N. W. 430; Com. v. Hawes, 13 Bush, 703; Hackney v. Welsh, 107 Ind. 255, 8 N. E. 142; State v. Plants, 25 W. Va. 122; State v. Vanderpool, 39 Ohio St. 276.]

3. There is no provision in the treaty between the United States and Great Britain, of August 9, 1842 (8 Stat. 572), which confers such immunity; nor is it conferred by the act of August 12, 1848 (9 Stat. 302), or by the act of March 3, 1869 (15 Stat. 337).

4. The British extradition act of August 9, 1870 (33 & 34 Vict. c. 52), has no binding force on the courts of the United States, in regard to the construction of the treaty of 1842.

5. It does not appear that the executive department of either the United States or Great Britain has construed the treaty of 1842 as conferring such immunity.

6. No order of the president can have any legal effect to restrict or enlarge the jurisdiction conferred by law on the courts.

7. The agreement set up in the plea is of no avail as an objection to the jurisdiction of the court.

[Cited in Ex parte Ah Men, 77 Cal. 202, 19 Pac. 381; State v. Brooks (Mo. Sup.) 5 S. W. 263.]

[This was an indictment against Charles L. Lawrence upon the charge of forgery. Demurrer to the indictment was previously overruled. Case No. 15,572.]

Benjamin B. Foster, Asst. U. S. Dist. Atty. Benjamin F. Tracy, for defendant.

BENEDICT, District Judge. This case comes before the court upon a demurrer interposed by the United States to a rejoinder filed by the defendant. The proceedings commence with an indictment charging the accused with several offences, all being forgeries, alleged to have been committed within the jurisdiction of this court, and all, by statute, offences against the United States. The accused was arrested within this district, by virtue of a bench warrant issued out of this court upon the indictment found, and thereupon, and on being required to plead, interposed a special plea to the jurisdiction of the court, in which he sets up that he was born a citizen of Great Britain, but had resided within the United States from the year 1847 to the year 1875, when he departed from the United States with intent to take up his residence in Great Britain and resume his duty and allegiance as a subject of her majesty the queen of Great Britain and Ireland; that, on the 7th day of March, 1875, in Ireland, upon a requisition made in behalf of the government of the United States, he was seized and thereafter charged with the crimes of forging and uttering a bond and affidavit purporting to be the bond and affidavit of one F. L. Blanding, and thereupon such proceedings were had upon said charge, that, in pursuance of the extradition act of the parliament of Great Britain, passed August 9, 1870 (33 & 34 Vict. c. 52), by arrangement between the government of the United States and the government of Great Britain, it was agreed, in respect to his surrender, that he should not, until he had been restored, or had an opportunity of returning, to her majesty's dominions, be detained or tried within the United States for any offence committed prior to his surrender, other than the extradition crimes of forging and uttering the said bond and affidavit, and thereafter, by force of said arrangement and agreement, and upon the faith thereof, an extradition warrant was issued, reciting that the defendant was accused of the crimes of forging and uttering a certain bond and affidavit within the United States, by virtue of which warrant the accused was conveyed within the jurisdiction of the United States, where he is subject to be tried for the crimes of forging and uttering the said bond and affidavit, and for no other crime or charge whatsoever. In this plea reference is also made to the act of congress of March 3, 1869 (15 Stat. 337), in pursuance of which it is averred, that the president of the United States, on the 21st of May, 1875, issued his order directly to the district attorney of the United States for the Southern district of New York, wherein said· attorney was directed to stay all proceedings against the accused, except upon the charges upon which he was extradited, until further order. After setting out the order in full, and averring that no further order has been made by the president, the plea goes on to set out a direction from the attorney general of the United States, addressed to the district attorney for the Southern district of New York, bearing date December 22, 1875, which order of the president and direction of the attorney general

the plea avers were made for the purpose of giving the defendant security against "lawless violence," and for the purpose of enforcing in his favor the rights to which he is entitled by virtue of the treaty of 1842, the act of congress of 1869, the act of parliament of 1870, and the arrangement entered into as aforesaid. The plea then avers, that the offences with which the accused is charged in the indictment are not the offences on which his surrender to the United States was grounded, but are other and different crimes from those specified in said warrant of extradition; and that he has been held in custody for the crimes specified in the warrant of extradition, but he has not been tried for either of said offences; wherefore the accused insists that this court has no jurisdiction to try the present indictment, until a reasonable time shall have elapsed, after his trial for the crimes specified in the extradition warrant, that he may have an opportunity to return to her Britannic majesty's dominions.

To this plea the United States filed a replication wherein it is admitted that the accused has been held in custody for the crimes specified in the warrant of extradition, and that he has not yet been tried for the said crimes. It is then averred, that, in the extradition proceedings against the accused, he was not, as in the plea alleged, charged with forging and uttering a bond and affidavit purporting to be the bond of one F. L. Blanding, but that, in said proceedings, evidence of the forging of twelve bonds was offered and admitted and made the basis of the claim of the United States for his surrender. It is then averred, that no arrangement was made between the government of the United States and the government of her Britannic majesty, express or implied, whereby it was provided and agreed that the accused should not, until he had been restored to, or had an opportunity of returning to, her majesty's dominions, be detained or tried for any offence other than the extradition crime on which his surrender was claimed; and it is insisted, that, by the laws of Great Britain and of the United States, as well as by the practice of both parties to the treaty, no limitation exists as to the number and character of the offences for which a person extradited may be tried. The order of the president, set out in the plea, is admitted, but it is denied that such order was issued, or intended to be issued, in pursuance of the act of congress of March 3, 1869, and, after admitting the direction of the attorney general of the United States, of December 22, 1875, set out in the plea, the replication proceeds to set out various and sundry other subsequent communications from the attorney general to the district attorney, and from the district attorney to the attorney general, by letter and by telegraph, in respect to the accused, whereby it is claimed the last instructions of the

attorney general are shown to be to move the trial of the present indictment; and the plea concludes with a general averment, that the offences in the indictment are the same specified in the warrant of extradition, and are not other and different offences, and that the district attorney is not prohibited by any order or direction, nor is there any contract which should or can restrain him, from moving the trial of this indictment. To this replication the defendant filed a rejoinder, in which the facts set forth in the plea are again set forth, without substantial change. To this rejoinder the government filed a general demurrer; and the cause is thus before the court on the demurrer.

In determining the questions of law thus presented by these extraordinary pleadings, it is necessary, at the outset, to ascertain what questions are open for determination, inasmuch as it is urged in behalf of the defendant that only the pleading demurred to is before the court for its judgment upon it, and it is insisted that the rule of pleading in civil cases, that judgment is to be given against the party committing the first fault, is not the rule in criminal cases. Upon this question my opinion is, that the rule of pleading in criminal and civil cases is the same. The same reason for the rule exists in both classes of cases; and, although no criminal case has been cited where the rule has been applied, the rule is stated by Archbold, without qualification, as the rule applied in criminal cases. He says (16th Eng. Ed. p. 122): "A demurrer has the effect of laying open to the court not only the pleading demurred to, but the entire record, for their judgment upon it as to the matter of law; and, if two or more of the pleadings be, bad in substance, the court will give judgment against the party who committed the first fault." This rule is applied the more readily in the present instance, because the examination of the issues of fact raised by the plea and replication is unnecessary, and ought not to be pursued unless it were indispensable to the protection of the legal rights involved. The entire record being thus before the court, I pass at once to the plea, and proceed to determine whether the facts there stated are sufficient in law to show that this court has no jurisdiction to try the present indictment.

In disposing of the questions argued before me upon this demurrer, I first notice the position taken, that all extradition proceedings, by their nature, secure to the person surrendered immunity from prosecution for offences other than the one upon which his surrender was made. This question is not open in this court. It was decided in U. S. v. Caldwell [Case No. 14,707]. That determination has since received strong support from the decision of the court of appeals of this state, in Adriance v. Lagrave, 59 N. Y. 110, where the existence of any such immunity was denied in a civil case; and it

should be noticed that the present circuit judge of this circuit took part in the decision of the court of appeals, being then a member of the court. This ground of defence is, therefore, dismissed, with the remark, that an offender against the justice of his country can acquire no rights by defrauding that justice. Between him and the justice he has offended no rights accrue to the offender by flight. He remains at all times, and everywhere, liable to be called to answer to the law for his violations thereof, provided he comes within the reach of its arm.

But, here it has been contended, that the accused has such immunity by reason of the provisions of the treaty of August 9, 1842 (8 Stat. 572), under which his surrender was made, which, it is correctly said, is a law of the United States binding upon the courts. The decision in Caldwell's Case is decisive of this question also, for, Caldwell was surrendered under the treaty of 1842. But, as no argument was made in Caldwell's Case based upon the provisions of this particular treaty, the argument now made in support of this construction of the treaty may properly be examined.

At the outset, let it be noticed, that no language is used in the treaty which can be supposed to confer the immunity here claimed. On the contrary, the language of the treaty is calculated to repel the idea, for, it declares that the offender shall be "delivered up to justice"—a significant and comprehensive expression, plainly importing that the delivery is for the purposes of public justice, without qualification.

It is, however, argued, that both the parties to this treaty have placed a construction upon its provisions, which confers the immunity for which the accused contends; and reference is made to the acts of congress of August 12, 1848 (9 Stat. 302), and March 3, 1869 (15 Stat. 337; Rev. St. U. S. §§ 5270–5277), and to the British extradition act of August 9, 1870 (33 & 34 Vict. c. 52), as supporting the assertion.

The act of congress of 1869 is a general law intended for the protection of extradited offenders; but, the protection it confers is expressly limited to cases of "lawless violence." It is true, that it assumes, as well it may, that the offender will be tried for the offence upon which his surrender is asked, but there are no words indicating that he is to be protected from trial for all other offences. The absence of any provision indicating an intention to protect from prosecution for other offences, in a statute having no other object than the protection of extradited offenders, is sufficient to deprive of all force the suggestion that the act of 1869, as a legislative act, gives to the treaty of 1842 the construction contended for by the accused.

So of the act of 1848, the provision of which relied upon (section 3) is, that it shall be lawful for the secretary of state to order the offender "to be delivered to such person or persons as shall be authorized, in the name and on behalf of such foreign government, to be tried for the crime of which such person shall be so accused, and such person shall be delivered up accordingly." It does not seem reasonable to suppose that it was the intention of congress, by the above language, to give a legislative construction to the existing treaty of 1842. The provision of the act of 1848 is within the broad provision of that treaty, but does not restrict the operation of that provision; and it may be safely assumed, that, if the intention to limit the effect of, or give a construction to, that or any other treaty, had been entertained—assuming such a function to belong to a statute of this character—that intention would have been plainly expressed.

The acts of congress referred to, therefore, fail to afford a legislative construction of the treaty, in the particular under consideration. It is still more difficult to find support for the doctrine of the defence in the provisions of the British extradition act of 1870. How can it be, that, without any action on the part of the treaty-making power of the United States, the parliament of Great Britain, by a statute of Great Britain passed 28 years after the treaty of 1842, can engraft upon that treaty a provision of immunity not found in the treaty, and which must thereafter be enforced by courts as part of the laws of the United States? The effect proper to be given by the executive department of the government to any condition found in an extradition statute of Great Britain, to which the government of the United States has assented in any particular case, is not under consideration. Here, the question is judicial, and it is, whether the British act of 1870, by reason of its subject-matter, becomes a law of the United States, and, as such, affords a legislative construction of this treaty, binding upon the courts of the United States. Upon such a question no time need be spent, and it is dismissed with the observation, that it would appear that the English courts incline to the opinion that the act of 1870 has no effect in England, even, to limit the operation of the treaty of 1842, as is seen by the opinions delivered in the court of queen's bench, in Ex parte Bouvier, 27 Law T. 844. The words of the lord chief justice, in that case, are: "I see plainly what was the intention of the legislature—that is to say, it was intended," by the act of 1870, "while getting rid of the statutes by which the treaties were confirmed, to save the existing treaties in their full integrity and force."

Nor is it made to appear that any such construction of the treaty of 1842 has been adopted by the executive department of either government. An agreement for such immunity in the present instance is set up by the plea. But, it is competent for the government of the United States to enter in-

to such an agreement with the government of England, in the absence of any provision for immunity in the treaty; and the demand for such an agreement on the one side, as well as the giving thereof on the other, leads to the inference that no such protection is afforded by the treaty itself. A single instance of such an agreement does not, therefore, help the argument. The understanding of the treaty by the executive department, is better shown by the action taken or omitted in the cases that have arisen where there has been no agreement. Thus, in the case of Heilbronn, who was surrendered by the United States upon the request of England, for an extradition crime, a trial was had in England for an offence not provided for in the treaty, without interference by the executive there, and without complaint from the government of the United States. So, also, Burley, an offender surrendered by England to this government, was put upon trial in this country for an offence other than the one upon which he was extradited, and, the case being called to the attention of the law officers of the crown, it was considered, that, "if the United States put him bona fide upon his trial for the offence in respect of which he was given up, it would be difficult to question their right to put him upon his trial also for piracy, or any other offence which he might be accused of committing within their territory, whether or not such offence was a ground of extradition, or even within the treaty." Clarke, Extr. (2d Ed.) p. 90, note. No case has been referred to where the right above spoken of has been questioned by the British government. On the contrary, if I am correctly informed, such right has not hitherto been denied in England.

As to the effect of the fact of a previous trial for the offence for which the offender was given up, to which allusion is above made, it is plain that such fact is immaterial in determining the judicial question, where legal immunity is set up by way of defence in a prosecution for other offences, however important that fact might be, as evidence of good faith, in determining the political question, when it arises.

It may be added, that the action of the executive department of the government of the United States, in the cases where extradicted offenders have been tried in this country for offences other than those upon which their surrender had been asked, has a significant bearing upon the legal question under consideration, because, in criminal cases, as distinguished from civil cases, the executive, by reason of the power conferred by law to control the prosecuting officer, as also its power to pardon, is not confined to a consideration of the political question alone, but may also act upon a determination of the judicial question.

But, it is further said, that the British act of 1870 amounts either to an abrogation of the extradition section of the treaty of 1842, or to a modification of the provisions; and that, inasmuch as, by the eleventh section, the government of Great Britain could at any time abrogate that portion of the treaty, the act of 1870, if considered by the government of the United States as an abrogation, would have been so declared, and, in the absence of such a declaration, must be considered to be acquiesced in by the government of the United States, as its construction of the treaty, and becomes a part of the treaty, binding upon the courts. This proposition is answered by what has been already said in regard to the effect of the British act of 1870, and the action of the government of the United States in the cases which have hitherto arisen. Moreover, if the action of the two governments, and the act of 1870, be given the utmost effect possible in favor of the accused, all that can be extracted from them is an implied engagement to afford protection to persons extradited in pursuance of the treaty, from prosecution for causes other than those upon which their surrender was asked —which addresses itself to the political, not to the judicial, department. It is not intended to suggest that such can be their effect, but simply to express the opinion, that, in any aspect, they have no greater effect, and in view of the language of the treaty, cannot be relied on as affording a legislative or executive construction of that instrument, binding upon the courts.

It may, therefore, without hesitation, be declared, that the claim of legal immunity, here made, is without foundation in the treaty of 1842. In support of this conclusion, reference is made to the authority of the court of appeals of the state of New York, which high court, in Lagrave's Case, was called on to consider the effect of this same treaty.

There remains to be examined that portion of the defence which is based upon the order of the president and the direction of the attorney general, set out in the plea. In regard to this defence, it is sufficient to say, that no order of the president, nor direction of the attorney general, can have any legal effect to restrict or to enlarge the jurisdiction conferred by law upon the courts. The courts, in determining the extent of their jurisdiction, look to the law, and, within that jurisdiction, they are absolutely free from the control of any other department of the government. See the remarks of Blatchford, J., in U. S. v. Blaisdell [Case No. 14,608]. It should be observed, in this connection, that it is evident that neither the order of the president, nor the communication of the attorney general to the district attorney, of December 22, 1875, set out in the plea, were intended to be resorted to as matter of defence, but are official communications intended solely for the consideration and guidance of the officer to whom they were addressed, and, presumably, have no reference whatever to judicial action. The mass of letters and telegrams with which the record is encumbered are,

therefore, to be considered as wholly irrelevant. They are outside the case and constitute no ground of objection to the jurisdiction of the court.

It may be added, that the presence of this indictment before the court, and moved for trial by the district attorney, by whom the government is represented before the court, as also it may now be by the attorney general in person, by virtue of the act of June 22, 1870 (16 Stat. 162, now Rev. St. U. S. § 359), is inconsistent with the averment that the trial is moved in opposition to the directions of the attorney general. When the attorney general of the United States, having knowledge of the moving of a criminal trial, permits the moving thereof, in law he directs the same, and the court must consider the trial to be moved by the government.

All the positions taken in behalf of the accused have now been examined, except that based upon the fact set up in the plea, that, in the case of the accused, an express agreement was made between the government of the United States and the government of Great Britain, by which it was provided and agreed, that the accused should not, until he had been restored, or had an opportunity of returning, to her majesty's dominions, be detained or tried within the United States, for any offence committed prior to his surrender, other than the crime of forging and uttering the said bond and affidavit, on which his surrender was thus claimed. Upon this point the argument made is, that, the existence of such an agreement being admitted by the demurrer, it must be recognized by the court, and the accused be protected by the court from prosecution upon an indictment charging offences other than those mentioned in the agreement, as stated. This position is supposed to be supported by the rule applied in civil cases, when a defendant has been inveigled within reach of the process of the court. But, the rule referred to has no application in criminal cases. The duty of the courts in criminal cases is stated by the court of king's bench, in Ex parte Scott, 9 Barn. & C. 447. Scott was indicted in England for perjury, and a warrant for her arrest issued. The officer proceeded to Brussels, and, there finding Scott, seized her without resort to extradition proceedings or other legal process. Application for assistance was then made by her to the British ambassador at Brussels, who refused to interfere, and she was carried to London, where she was brought before the court upon habeas corpus, and the above facts made to appear. Lord Tenterden, C. J., in delivering the opinion of the court, thus lays down the rule in criminal cases: "The question is, whether, if a person charged with a crime is found in this country, it is the duty of the court to take care that such a party shall be amenable to justice, or whether we are to consider the circumstances under which she was brought here. I thought, and still continue to think,

that we cannot inquire into them." These words express the opinion of this court. A different rule would seriously embarrass the administration of the criminal laws, and cannot be permitted here to obtain, until it has received the sanction of controlling authority. If, then, an agreement exists between the government of the United States and the government of Great Britain, such as is set forth in the plea, the performance thereof is within the power of the government, by reason of its legal control over the prosecuting officer; and all that need be said here is, that such an agreement can avail nothing to a defendant setting it up by way of plea to the jurisdiction of the court before which his trial is moved by the government.

The decision, therefore, must be, that the plea to the jurisdiction, and all subsequent pleadings in this case, be set aside, with liberty to the defendant to plead anew to the charges is the indictment contained.