## *In re* MILLER.

*(Circuit Court, W. D. Pennsylvania.* February 18, 1885.*)*

1. EXTRADITION—TREATY WITH GREAT BRITAIN OF 1842—HOLDING FUGITIVE—CRIME.
   Under the treaty of 1842, between the United States and Great Britain, an extradited fugitive may be held by the receiving government on his prior conviction and sentence for a non-extraditable crime.
2. SAME—DEFENSE—GOOD FAITH OF EXTRADITION PROCEEDINGS.
   In the tribunals of his own country the surrendered fugitive cannot question the good faith of the extradition proceedings.

*Habeas Corpus.*
*J. T. Maffett* and *Wm. R. Blair*, for petitioner.
*E. A. Montooth, contra.*

ACHESON, J. The petitioner claims his discharge on the ground that he is unlawfully held in custody in violation of the tenth article of the treaty of 1842 between the governments of the United States and Great Britain. Briefly, the facts of the case are these:

The petitioner was convicted of burglary in the court of oyer and terminer of Clarion county, Pennsylvania, and thereupon was sentenced on August 23, 1881, to undergo an imprisonment for the period of seven years in the Western Penitentiary of Pennsylvania, to which prison he was duly committed. In December, 1881, he escaped therefrom and fled to Canada. Burglary not being an extradition crime,

informations were made in January, 1882, in said county of Clarion, against the petitioner, charging him with robbery and assault with intent to commit murder, and under extradition proceedings had on these charges he was surrendered on March 11, 1882. He was then taken back to the Western Penitentiary of Pennsylvania, where he has since been held. Bills of indictment against him on the said charges of robbery and felonious assault were ignored by the grand jury of Clarion county on January 17, 1883. The petition alleges that said informations were gotten up by the penitentiary authorities as a mere pretext to secure the petitioner's surrender, to the end that they might seize and imprison him on his conviction for burglary. The return of the warden of the penitentiary sets up, as his authority for holding the petitioner, his commitment to the penitentiary by the court of oyer and terminer of Clarion county under his conviction and sentence for burglary.

The application for the petitioner's discharge proceeds upon the theory that the treaty between the United States and Great Britain secures to the extradited person immunity from detention for any crime other than that upon which the surrender is made; or, at least, exemption from detention for any offense not within the treaty. Now, it is indeed true that it has been held by Judge HOFFMAN, in *U. S.* v. *Watts,* 14 FED. REP. 130, and by the supreme court of Kentucky, in *Com.* v. *Hawes,* 13 Bush, 697, that an extradited person under this treaty cannot be tried for any offenses other than extradition crimes; and in *State* v. *Vanderpool,* 39 Ohio St. 273, the supreme court of Ohio carried the doctrine of exemption still further, holding that the extradited person could be put on trial only for the particular offense for which he had been surrendered. Upon these adjudications, which, on account of the eminence of the judges and courts pronouncing them, are certainly entitled to great respect, the petitioner's counsel confidently rely as establishing a principle applicable to and decisive of this case. But then, on the other hand, in *U. S.* v. *Caldwell,* 8 Blatchf. 131, and *U. S.* v. *Lawrence,* 13 Blatchf. 295, it was held by Judge BENEDICT (who gives most cogent reasons for the conclusion) that extradition proceedings do not by their nature secure to the person surrendered for one crime immunity from prosecution for other offenses, whether within the treaty or not; and he distinctly ruled that no such immunity is conferred by the treaty now under consideration. A like determination was reached by the court of appeals of New York in *Adriance* v. *Lagrave,* 59 N. Y. 110, where an extradited person, surrendered by the government of France under treaty stipulations, was arrested on civil process.

The question whether the treaty of 1842 between the United States and Great Britain prohibits the trial of the extradited person for an offense not specified in the proceedings or named in the treaty, must, therefore, be regarded as still open, while the precise question now before me, it would seem, is altogether new. If the treaty affords

the petitioner the immunity he claims, it is by mere implication, for assuredly it does not in express terms confer on extradited persons any immunity whatsoever. It provides that the respective governments, upon requisition made and upon satisfactory evidence of the alleged criminality, shall "deliver up to justice" all persons who, being charged with any of seven specified crimes, (of which burglary is not one,) committed within the jurisdiction of either, shall seek an asylum or be found within the territories of the other. There is, however, no provision in the treaty guarantying to the extradited person the right to leave the demanding country after his trial for the offense for which he was surrendered, in case of acquittal, or, in case of his conviction, after his endurance of the punishment therefor. Nor is there any express limitation upon the causes of his detention. Indeed, as to his disposition after his surrender the treaty is altogether silent. The high contracting parties might have provided for a surrender upon conditions, but they have not seen fit to do so. Whence, then, springs the petitioner's supposed immunity? Upon what sound principle can the demand of this convicted criminal, to be set at liberty before the expiration of his sentence, be allowed? Clearly, an offender can acquire no rights against the claims of justice by flight to a foreign jurisdiction, (*State* v. *Brewster,* 7 Vt. 118; *Dow's Case,* 18 Pa. St. 37;) and extradition treaties are not made in the interest of fugitive criminals. In the absence, then, of express stipulation imposing restraints upon the receiving government, it seems to me the intention is not to be imputed to the parties to the treaty to exempt the surrendered fugitive from deserved punishment for an offense (regarded by the laws of both countries as a gross crime) of which he had previously been duly convicted. It may have been open to the petitioner, when before the Canadian courts, to show that the extradition proceedings were not prosecuted in good faith. But, having been surrendered, it is not for him to raise that question before the tribunals of his own country. *Adriance* v. *Lagrave, supra; Dow's Case, supra.*

I am of opinion that the petitioner's complaint, that he is in custody in violation of the treaty under which he was extradited, is groundless. Hence his discharge must be denied; and it is so ordered.