Hackney *v.* Welsh.

<hr/>

No. 13,131.

## HACKNEY *v.* WELSH.

EXTRADITION.—*Surrender of One Brought by Requisition from Another State.*— *Escape.*—Where one commits a felony in Michigan, and voluntarily comes into this State and is arrested for a felony committed here, and while in custody a warrant for his arrest, issued on a requisition from Michigan, is received by the officer detaining him, but the accused, escaping from custody, flees to Ohio, from which State he is returned to Indiana upon requisition, he may, upon the failure of the prosecution against him in this State, be surrendered to the authorities of Michigan on the requisition from that State.

SAME.—*Good Faith of Public Officers.*—*Presumption.*—The presumption is that public officers discharge their duties in good faith, and the mere fact that the accused was kept in custody for more than a year, when a *nolle prosequi* was entered to the charge preferred against him in this State, does not show bad faith.

SAME.—*Good Faith not Affected by Knowledge or Expectation of Sheriff.*—*Prosecuting Attorney.*—The good faith of extradition proceedings is not affected by the knowledge or expectation of reward of the sheriff, as the State is not represented by that officer but by the prosecuting attorney.

SAME.—*Authentication.*—*Governor's Certificate.*—The Governor is not required to certify that an information and other papers accompanying a requi-

sition are genuine; it is sufficient if he certifies that they are duly au-
thenticated.

SAME.—*Affidavit.—Signature of Prosecuting Attorney.*—An authentication by
affidavit and by the signature of the prosecuting attorney is sufficient.

From the Decatur Circuit Court.

*J. D. Miller* and *F. E. Gavin,* for appellant.

*J. K. Ewing, C. Ewing, W. A. Moore* and *J. O. Marshall,*
for appellee.

ELLIOTT, J.—The appellant petitioned for a writ of *habeas
corpus,* alleging, in his petition, that he was unlawfully re-
strained of his liberty by the appellee; that the cause of his
restraint was an arrest under a warrant issued by the Gov-
ernor of Indiana upon a requisition from the Governor of
Michigan; that the restraint is illegal in this, that he is a
resident of the State of Ohio, and in September, 1885, was
arrested by authority of a warrant issued by the Governor of
that State upon a requisition from the Governor of Indiana;
that this requisition was issued upon an indictment returned
by the grand jury of Decatur county, in this State, charging
him with a felony; that he was surrendered to the agent of
this State to be tried on that indictment, and that he has
been continuously in the jail of Decatur county on that charge
from the time the indictment was returned until April, 1886,
when a *nolle prosequi* was entered.

The return of the appellee alleges that the petitioner is
held in custody under a warrant issued by the Governor of
Indiana upon a requisition from the Governor of Michigan;
that the petitioner committed the crime of larceny in the
State of Michigan, and, fleeing from justice in that State, vol-
untarily came into Indiana; that, by virtue of the indict-
ment returned against him by the grand jury of Decatur
county, he was confined in the jail of that county on the 12th
day of December, 1884, and there remained until the 12th
day of September, 1885, when he escaped and fled to the
State of Ohio; that, upon a warrant issued by the Governor

of that State pursuant to a requisition of the Governor of Indiana, he was arrested and brought back to the jail of Decatur county from which he had escaped ; that the warrant issued on the requisition of the Governor of Michigan came to the hands of the appellee on the 29th day of December, 1884 ; that the petitioner is not a resident of Ohio, but is a travelling pickpocket, and that neither the State of Michigan nor its agents had any connection with the petitioner's arrest in Ohio.

There is some conflict in the authorities as to whether a person who is brought from one State to another to answer a particular charge can be tried on any other charge than that upon which he was extradited. *State* v. *Stewart*, 60 Wis. 587 (50 Am. R. 388) ; *Adriance* v. *Lagrave*, 59 N. Y. 110 (17 Am. R. 317) ; *In re Noyes*, 17 Albany L. J. 407 ; *U. S.* v. *Caldwell*, 8 Blatchf. 131 ; *U. S.* v. *Lawrence*, 13 Blatchf. 295 ; *Williams* v. *Bacon*, 10 Wend. 636 ; *Browning* v. *Abrams*, 51 How. Pr. 172 ; *Com.* v. *Hawes*, 13 Bush, 697 (26 Am. R. 242) ; *State* v. *Vanderpool*, 39 Ohio St. 273 (48 Am. R. 431) ; *Compton* v. *Wilder*, 40 O. S. 130 ; *In re Cannon*, 47 Mich. 481. Instructive and interesting discussions of this subject will be found in 14 Albany L. J. 96 ; Princeton Review, January, 1879 ; North American Review, May, 1883 ; 20 Albany L. J. 425 ; Spear Extradition, 558 ; Church on Habeas Corpus, section 462.

We can not accept as authority the cases in which treaty stipulations exerted a controlling influence, for here there are no such stipulations, and in our opinion there is an essential difference between the two classes of cases. The case before us is entirely unaffected by treaty stipulations and is a purely inter-state one. There is a class of cases, we may remark in passing, which strongly support the doctrine of the cases which hold that a person brought into a State to answer a particular charge may be tried upon another. We refer to those cases which hold that no matter how the criminal comes within the jurisdiction of the State he may be tried.

State v. Wenzel, 77 Ind. 428 ; Ex Parte Krans, 1 B. & C. 258 ; Ex Parte Scott, 9 B. & C. 446; Ker v. People, 110 Ill. 627 (51 Am. R. 706); Ham v. State, 4 Texas App. 645 ; Dows' Case, 18 Pa. St. 37. But we are not required to enter this field of controversy, for we regard the case before us as essentially different from those to which we have referred.

The difference between this case and the cases lying in the field of controversy is this : Here the State, upon whose request the accused was extradited, is not seeking to try him for any offence, nor to subject him to its jurisdiction. The authorities of Indiana are not seeking to do more than to allow the requisition from the State of Michigan to operate upon a fugitive from justice who had voluntarily come within our territory. They do not seek to try him for any offence under our laws, but all they are seeking to do is to give effect to the demand of a sister State. It is really Michigan and not Indiana that detains the petitioner. Indiana, therefore, is not guilty of any bad faith, nor of any breach of comity.

There is still another important difference between this case and those referred to, for here the fugitive was voluntarily in Indiana before December 29th, 1884, when the warrant on the requisition from Michigan was received by the appellee as sheriff of Decatur county, and he was, therefore, subject to arrest on that warrant before he escaped from jail and fled to Ohio. Prior to his imprisonment he was voluntarily in Indiana, and it was by his escape from the jail of Decatur county that he succeeded in leaving our territorial limits. If he had not escaped, it is quite clear that he could have been rightfully surrendered under the warrant issued by the Governor of this State. When that warrant came to the hands of the appellee, the appellant was in this State, and might, we repeat, have been held under it, so that, when he was brought back to Indiana after his escape from jail, he was in no worse plight than when he fled. It was

Hackney *v.* Welsh.

the fault of our officers, if fault there was, not of those of Michigan, that he did escape, and they are not answerable for his absence from Indiana.  It would be an unsubstantial refinement to hold that the escape from jail and flight to Ohio deprived the Governor's warrant of force and required our officers to permit the appellant to again flee to that or some other State.  We are not dealing with a case in which Indiana seeks to try a man for a violation of an Indiana law, nor are we dealing with a case where the officers of the State have brought a man within our territory for the purpose of subjecting him to the demand of another State.  On the contrary, we have before us a case where the accused had voluntarily come into our State, was arrested for a violation of our laws, was imprisoned in one of the jails of the State when the demand reached our officers, and had succeeded in getting out of our territory by his escape from jail and flight to another jurisdiction.  The fugitive was voluntarily in Indiana when our Governor issued the warrant; he was not brought here to make that warrant operative, for he had come here by his own voluntary act.  The Michigan authorities now demand him, and all that Indiana does in surrendering him is to yield to the demand of a sister State a fugitive who was voluntarily in our State before that demand reached its officers.

A case is referred to by Mr. Spear as reported in Binn's Justice, where it was held, " where a defendant is brought into a State as a fugitive from justice, after acquittal, or conviction and pardon, he can not be surrendered to the authorities of another State as a fugitive, but must be allowed an opportunity to return to the State in which he is domiciled." Spear's Law of Extradition (2d ed.) 558.  We can not ascertain the facts of that case, but we know that it was the decision of the court of Quarter Sessions, and therefore of but little value as an authority.  So far as we can judge of the case it is different from the present, as it does not there ap-

pear that when the demand from the sister State reached the
State to which it was addressed, the accused was confined in
jail for an offence committed after he had voluntarily come
into the State.    This we regard as an essential fact, exerting
an important influence in the case.    But, conceding that the
case is directly opposed to our views, it is difficult, if not im-
possible, to reconcile it with the decision in *Dows' Case, su-
pra,* where it was said, by the court, speaking through one
of the ablest judges that ever occupied its bench, GIBSON, C.
J., that "A judge at the place of arrest, could not be *bound*
to discharge a prisoner proved to have fled from a well-
founded accusation of murder."    The decision in *People*
v. *Sennott,* 20 Albany L. J. 230, is here strongly in point
in support of our conclusion, although the case before us is
a stronger one against the accused person than was that, for
there the accused was not in the State of Illinois by his vol-
untary act when the warrant upon the requisition reached the
hands of the sheriff; while here the fact is that at the time the
Governor of Indiana issued his warrant the appellant was in this
State, not brought here upon compulsory process, but here by
his own act.   The fact just mentioned exerts an important influ-
ence upon this case, and had it existed in the Illinois case
would have disarmed Mr. Spear's criticism of much of its
force.    The same case came before Judge Drummond of the
United States Circuit Court, and he decided it as the State
court had done.    12 Chicago Legal News, 115.

We have no doubt that the authority of these decisions,
waiving all other considerations except the rank and the stand-
ing of the courts, is much weightier than that of the court
of Quarter Sessions of Philadelphia.

Our conclusion is further supported by the decision of
the Court of Appeals of New York in *Adriance* v. *Lagrave,*
*supra,* where this statement of the law was approved: " We
admit in this country that, if a man is *bona fide* tried for the
offence for which he was given up, there is nothing to pre-

vent his being subsequently tried for another offence, either antecedently committed or not.   *   *   Clarke Ex. 90."

In this instance the agents of the State of Michigan were not guilty of any wrong, for they are simply attempting to enforce a warrant issued by the Governor of Indiana at a time when the fugitive from Michigan was in Indiana, by his own act, and Indiana is not acting in bad faith, for there is no effort to try the petitioner for a crime different from that upon which he was extradited.

It is contended in the able brief of appellant's counsel that the fact that their client was kept in jail from September, 1884, until April, 1886, when a *nolle prosequi* was entered, shows bad faith. This contention can not prevail. The presumption is in favor of good faith, and the mere fact that the appellant was kept in custody does not show fraud. *Louisville, etc., R. W. Co.* v. *Thompson, post,* p. 442. So, too, the presumption is that public officers have faithfully discharged their duties, and the facts pleaded do not rebut either of these presumptions.

It is also asserted that " the information and other papers accompanying the requisition are not authenticated." In support of this position counsel say: " The Governor does not certify that they are genuine, but he says that they are duly authenticated." We do not understand that the law requires the Governor to certify that the papers are genuine; it is sufficient if he certifies that they are duly authenticated. *Ex Parte Reggel,* 114 U. S. 642.

We think counsel are in error in assuming that the papers are not authenticated, for we find that they are authenticated by affidavit and by the signature of the prosecuting attorney. *Ex Parte Reggel, supra; Tullis* v. *Fleming,* 69 Ind. 15; *Robinson* v. *Flanders,* 29 Ind. 10; *Nichols* v. *Cornelius,* 7 Ind. 611.

The reply to the return alleges that the sheriff knew that the appellant was not to be tried on the charge preferred against him by the grand jury of Decatur county, and that

he brought him back to that county from Ohio for the purpose of returning him to Michigan and receiving a reward. We incline to the opinion that this reply is bad as a departure from the petition, but, aside from this consideration, we deem it bad. The prosecuting attorney of the judicial circuit, and not the sheriff, represented the State, and the knowledge of the sheriff could not affect that officer. The warrant and requisition were, we must presume, procured in good faith, and there is nothing alleged which overthrows this presumption.

The knowledge or expectation of the sheriff could not affect the State, nor any of its other officers; but, even if it could, certainly the State of Michigan would not be affected, and it is really that State, and not Indiana, that detains the appellant.

Judgment affirmed.

Filed June 26, 1886.