---

### In re HOPE.

(*Executive Chamber*. November, 1889.)

1. EXTRADITION— WHO SUBJECT TO—ESCAPED CONVICTS.
   Const. U. S. art. 4, § 2, subd. 2, providing that "a person charged in any state with treason, felony, or other crime, who shall flee from justice and be found in another state shall * * * be delivered up to be removed to the state having jurisdiction of the crime," authorizes the extradition of a person who escapes after conviction.

2. SAME—ARREST FOR DIFFERENT OFFENSE.
   A defendant who is brought into a state by extradition proceedings, cannot, at the expiration of the term of imprisonment imposed, be arrested on a requisition from another state until he has had reasonable time to return to the state from which he was extradited.

James Hope was brought from California to New York under a requisition from the governor of New York, was convicted of the crime charged, and sentenced to a term of imprisonment. After his term had expired, and before an opportunity had been given him to return to California, he was arrested on a requisition from the governor of Delaware to the governor of New York, and he now applies to the governor of New York to vacate the warrant of arrest.

*Charles W. Brooke*, for petitioner.

HILL, Governor. The governor of Delaware has issued a requisition upon me for the return to that state of the prisoner, James Hope. The papers ac-

companying the requisition consist of a copy of an indictment against Hope for .burglary, and a record of conviction thereunder in Delaware, showing his sentence for 10 years, and proof by affidavit that he escaped from jail with over 9 years of such sentence unserved. His return to that state is demanded for the purpose of compelling him to serve out the remainder of his unexpired sentence. The requisition was honored by me *pro forma,* and the prisoner arrested, and now, after a full hearing has been had, the question arises whether the warrant should not be revoked. Mr. Charles W. Brooke, the prisoner's counsel, insists that the requisition should be revoked, upon the ground that there is no authority under the constitution and the laws for the extradition of an escaped convicted prisoner. He argues that a person can only be returned to another state to answer a charge made against him· upon which no conviction has yet been had. The broad ground is taken that there is no legal remedy whatever provided to secure his return where a convicted felon escapes from one state into another. If this be true, it is new doctrine, indeed, and discloses a lamentable defect in our criminal laws. The constitutional provision relating to interstate extradition, (article 4, § 2, subd. 2,) declares that "a person charged in any state with treason, felony, or other crime, who shall flee from justice and be found in another state, shall * * * be delivered up, to be removed to the state having jurisdiction of the crime." It is seriously urged that a person cannot be deemed to be "charged" with a crime when he has already been convicted for such crime. It seems to be claimed that the "charge" no longer exists because it is deemed merged in the conviction. It is also urged that the law-writers have laid it down in the books that the declared object of an extradition is the removal of the person charged with the crime for the purpose of his being subsequently tried upon the charge presented against him, and that extradition cannot be invoked for any other purpose. This is ordinarily so, and correctly states the general rule. These expressions to be found in the books, however, have reference, not to exceptional instances, but to the usual class of cases where offenders have fled from one state to another prior to apprehension or conviction. Such flights are common, while escapes after conviction are rare. It is clear that in enunciating a general proposition there was no intention of excluding or exempting convicted escaped persons from liability to extradition. No narrow or strained construction should be placed upon the word "charged," as used in the constitution in the federal statute. It is broad enough to include all classes of persons duly accused of crime. A person can be said to be "charged" with crime as well after his conviction as before. The conviction simply establishes the charge conclusively. An unsatisfied judgment of conviction still constitutes a "charge" within the true intent and meaning of the constitution. An indictment or affidavit merely presents the charge, while a conviction proves it. To warrant extradition the statute requires an indictment or affidavit charging a crime, but if, in addition thereto, there is also presented a record of conviction, the case is not weakened but rather strengthened. The public purpose to be effected by extradition must be taken into consideration in determining the question. Its object is to prevent the successful escape of all persons accused of crime, whether convicted or unconvicted, and to secure their return to the state from whence they fled, for the purpose of punishment. It is invoked to aid the administration of criminal justice, and to more certainly insure the punishment of the guilty. The construction contended for by the prisoner's counsel would defeat the ends of justice in many instances, and it is conceded that there is no express decision favoring it. It has been usual to grant extradition in similar cases. The *Case of Carter* [1] (decided by me on July 10, 1885) was just such a case, although this precise point was not then raised. In *Dolan's Case,* 101 Mass.

[1] Not reported.

219, and in *Hollon* v. *Hopkins*, 21 Kan. 638, the prisoners were returned by extradition to other states to serve out unexpired sentences, and no such question seems to have been raised as to the legality of the proceedings. This first point raised by the prisoner's counsel seems altogether too technical, and I am constrained to overrule it.

The next question presented is not without merit. It was shown upon the hearing before me that Hope did not voluntarily come into this state, but was brought here in 1887 from the state of California, on a requisition from the governor of this state, to answer a charge of crime made against him, and that since he has been incarcerated in the Auburn prison; and it appears that upon his term of imprisonment expiring, he has been arrested under or by virtue of the requisition in question from the governor of Delaware. It is conceded that such arrest was made before a reasonable time and opportunity had been given him, after his release from Auburn, to return to California, where he claims he desired and intended to go. This state of facts presents an interesting question upon which there have been conflicting decisions for many years. Upon principle, I think, it is clear that where a prisoner is brought into this state from another state or country upon extradition proceedings, he cannot properly be tried upon any other charge than that mentioned in the requisition, and that upon his acquittal, or if convicted, then upon the expiration of his imprisonment, he is entitled to a reasonable time in which to return to the other state or country from which he was thus forcibly taken before he can be again arrested. The recent decision of the supreme court of the United States (*U. S.* v. *Rauscher*, 119 U. S. 407–429, 7 Sup. Ct. Rep. 234,) must be deemed to settle this question in accordance with the doctrine above stated. Although, in that case, the prisoner was brought from a foreign country, the decision is applicable to this case, because in principle there is no practical difference between the case of a fugitive brought from a neighboring state under the constitution and laws of the United States and one brought from a foreign country under the provisions of its treaties. In the *Rauscher Case*, above cited, all the conflicting authorities in both the federal and state courts are reviewed and considered in the able opinion of the court by Mr. Justice MILLER, and the principle here contended for is expressly approved. This being the decision of the highest court in the land upon a question which must be regarded as essentially federal in its character, it should be respected and followed, not only by all federal courts, but by all state courts as well. The cases which have held heretofore, either expressly or impliedly, a contrary doctrine—and there are many (*Adriance* v. *Lagrave*, 59 N. Y. 110; *U. S.* v. *Lawrence*, 13 Blatchf. 295; *Hackney* v. *Welsh*, 107 Ind. 253, 8 N. E. Rep. 141; *Williams* v. *Bacon*, 10 Wend. 636)—should no longer be regarded as good authority upon this particular question. This is the view taken in the recent cases of *State* v. *Hall*, 40 Kan. 338, 19 Pac. Rep. 918, and *In re Reinitz*, 39 Fed. Rep. 204, 23 Abb. N. C. 69, in each of which the *Rauscher Case* is followed. It is believed that the decision in the *Rauscher Case* will be cheerfully acquiesced in by the courts and officials of all the states, not solely because it is the interpretation of the law from our highest court, but also because it will be found upon reflection to be entirely correct in principle. It is in harmony with the views expressed by the best text-writers upon extradition. It is in accordance with common sense. It will render extradition proceedings entirely consistent, and prevent unseemly conflicts of jurisdiction. The true theory, which now seems to be firmly established, is that a state should not be allowed to obtain jurisdiction of a fugitive from justice, and then to take advantage of that jurisdiction thus obtained, and use it for another and different purpose; that a fugitive surrendered on one charge is exempt from prosecution on any other; that he is within the state by compulsion of law upon a single accusation, and has a right to have that disposed of, and then to depart in peace; and that if, after

his release, he remains in the state beyond a reasonable time, he then can be arrested, but not otherwise. It follows from what has been here stated that the arrest in this case was premature, and that the warrant heretofore issued should be revoked.