# THE STATE v. RAY H. CUMMINS, Appellant.

Division Two, July 5, 1919.

1. **EVIDENCE: Other Burglaries: Conspiracy.** Where there is testimony that defendant, a policeman, entered into an agreement with a burglar and some women by which the moneys and goods stolen by the burglar from houses burglarized by him were to be divided among them, in return for protection to the others by defendant, testimony of other burglaries than the one specified in the indictment, which the burglar testifies were committed about the same time and in pursuance to the continuing conspiracy, is competent.

2. ———: ———: **Committed Before Conspiracy Was Formed.** When a witness was testifying concerning the burglarizing of his house defendant objected because it did not then appear that defendant was connected with any burglary except the one specified in the indictment. At that time the witnesses by which the State subsequently attempted to prove that the defendant and one of them had entered into an agreement by which defendant, in consideration of police protection for the other, was to share in the goods stolen, had not testified, and consequently the court could not then tell whether the connection would be later established. It later developed that at the time the witness's house was burglarized defendant had never met his said accomplice, but the objection was not then renewed. *Held*, first, that since the objection was not renewed, the admission of the testimony was not error, and, second, since the accomplice testified that he divided the goods which he stole from said house with defendant, under said agreement, the testimony was competent.

3. **ELECTION: Burglary and Larceny: Receiving Stolen Goods.** Where the evidence is comprehensive enough to sustain a conviction either for burglary and larceny, or for receiving stolen goods, knowing them to have been stolen, the court does not err in refusing to compel the State to elect upon which of the two counts of the indictment, charging both offenses in separate counts, it will stand.

4. **INSTRUCTION: Uncorroborated Testimony of Accomplice.** An instruction telling the jury that they are at liberty to convict the defendant upon the uncorroborated testimony of an accomplice alone, if they believe his statements are true and sufficient to establish defendant's guilt, but that such testimony, when not corroborated, ought to be received with great caution, is not error.

5. ———: **Assumption of Disputed Fact.** An instruction telling the jury that "evidence of other burglaries and larcenies were admitted

by the court solely for the purpose of determining whether a con-
spiracy" existed between defendant and his accomplice to burglarize
various dwellings in the city "and you are to consider this evi-
dence for no other purpose," did not assume that other burglaries
had been committed or that defendant had committed them.

6. **SUFFICIENT EVIDENCE:** Burglary and Larceny. The evidence in
this case, which is fully set out in the statement, was sufficient to
sustain a conviction of burglary in the second degree and larceny,
and assessing defendant's punishment at five years' imprisonment
for the burglary and five years for the larceny, the evidence being
that defendant, a policeman, entered into an agreement with a
burglar and some women by which, in consideration of protection
for them, the burglar was to burglarize dwelling houses in the com-
munity and divide the stolen goods among them.

Appeal from St. Louis City Circuit Court.—*Hon.
Victor H. Falkenhainer,* Judge.

AFFIRMED.

*Charles A. Houts* for appellant.

(1) It is not admissible, upon the trial of an indict-
ment for burglary or larceny, to introduce evidence of
other burglaries or larcenies. State v. Daubert, 42 Mo.
242; State v. Spray, 174 Mo. 569; State v. Boatright,
182 Mo. 33. (2) Where, by exception to the general
rule, evidence of other crimes is admitted to show a
common scheme or plan, such evidence of other crimes
must in fact tend to establish a common scheme or plan;
otherwise, such evidence is not admissible. State v.
Hyde, 234 Mo. 200. (3) Evidence of other burglaries
by Frank (an alleged co-conspirator) was not ad-
missible for the purpose of proving the existence of a
conspiracy between him and the defendant. 3 Bishop
New Criminal Procedure, sec. 229; Metcalfe v. Conner,
12 Am. Dec. (Ky.) 340. (4) It is error to instruct
that a defendant charged with a felony can be con-
victed upon the uncorroborated testimony of an ac-
complice. State v. Wilkins, 221 Mo. 444.

*Frank W. McAllister,* Attorney-General, and *Shrader P. Powell,* Assistant Attorney-General for respondent.

(1) The verdict meets the statutory requirements in every particular. State v. Blockberger, 247 Mo. 606; State v. Kinney, 190 S. W. 306; State v. Conway, 241 Mo. 276. (2) The court did not err in permitting the State to introduce evidence of the commission of other burglaries and larcenies for the purpose of showing the intent and a common scheme and plan. State v. Myers, 82 Mo. 558; State v. Bailey, 190 Mo. 280; State v. Spaugh, 200 Mo. 594; State v. Kinney, 190 S. W. 306; State v. Patterson, 271 Mo. 109; State v. Lewis, 273 Mo. 530; State v. Othick, 184 S. W. 108. It is proper to introduce testimony showing that the defendant and others combined and confederated together for the commission of a series of criminal acts, even though a conspiracy is not charged in the indictment. State v. Collins, 181 Mo. 261; State v. Rock, 194 Mo. 432; State v. Vaughan, 203 Mo. 670; State v. Casto, 231 Mo. 408; People v. Micelli, 142 N. Y. S. 104. (3) The action of the trial court in overruling defendant's motion to require the State to elect upon which count or charge in the indictment it would stand, was erroneous. State v. Sutton, 64 Mo. 108; State v. Carrigan, 210 Mo. 366; State v. Pace, 269 Mo. 686; State v. Christian, 253 Mo. 393. (4) The evidence adduced on the trial is amply sufficient to sustain the verdict returned by the jury. State v. Concelia, 250 Mo. 420; State v. Maurer, 255 Mo. 168. (5) Instruction number one properly defined the crime of burglary and larceny. State v. Fields, 234 Mo. 623; State v. Shout, 263 Mo. 373; State v. Walker, 98 Mo. 104. Instruction number five which announces the law relative to knowingly receiving stolen property is in an approved form. State v. Sakowski, 191 Mo. 642; State v. Kosky, 191 Mo. 1. Instruction number six clearly defined the terms "common design" and "conspiracy." State v. Walker, 98 Mo. 95; State v.

Lewis, 273 Mo. 534; Kennish v. Safford, 193 Mo. App. 372. By instruction number eight the jury was advised that they could consider evidence of receiving stolen property other than the particular instance charged in the indictment only for the purpose of showing intent and is fully sustained by the authorities. State v. Patterson, 273 Mo. 110; State v. Spaugh, 200 Mo. 594. The jury was likewise advised by instruction number 8-A, that evidence of other burglaries and larcenies was admitted for the sole purpose, and could be considered only in determining whether a common design and scheme existed between the defendant and the witness Franke. State v. Bailey, 190 Mo. 284; State v. Lewis, 273 Mo. 530. Instruction number nine and ten clearly stated the law relative to the rule for weighing the testimony of an accomplice. State v. Donnelly, 130 Mo. 649; State v. Kosky, 191 Mo. 9; State v. Bobbitt, 215 Mo. 42.

RAILEY, C.—On September 29, 1917, the grand jury of the City of St. Louis, returned into open court an indictment in two counts, charging defendant, Ray Cummins, in the first count, with burglarizing the house of Jessie Bennett and Charles Bennett on June 5, 1916, and also with stealing therefrom certain articles of jewelry of the total value of $442.50. The second count of the indictment charged defendant with receiving stolen property. On January 7, 1918, defendant waived formal arraignment and entered a plea of not guilty. He filed a motion to require the State to elect, as to which count it would proceed to trial, and this motion was overruled.

On January 8, 1918, the trial was commenced, a jury impaneled and after hearing the evidence and receiving the instructions of the court, a verdict was returned, finding the defendant guilty of burglary in the second degree and larceny as charged in the first count of the indictment, and assessing his punishment at five years' imprisonment in the State Penitentiary for the burglary and five years additional for the larceny.

After unsuccessful motions for a new trial and in arrest of judgment, the court pronounced sentence in accordance with the terms of the verdict. Thereupon defendant was granted an appeal to this court.

The testimony submitted on the part of the State *tends to show* that the defendant was, at the time of the commission of the crime charged, a police officer in the City of St. Louis, and had been for nine or ten years prior to 1915. During the month of December, 1915, he became acquainted with one George Franke, a professional house-breaker, and entered into an agreement with Franke, by which he (defendant) was to share in the proceeds of the loot or stolen plunder, in return for the protection from arrest he was to accord to Franke. The evidence shows that some time during the month of December, 1915, Franke met defendant at the home of a Mrs. Enyart, located at 3324 Vincent Avenue, and that a Mrs. Champagne and a Mrs. Edna Stevens were at the Enyart place at the time. The two first-named women had, for some years prior to the date above mentioned, been receiving from Franke stolen property, and the last-named woman conducted a house of ill repute at 730 Carpenter Street. The arrangement seems to have been for the defendant to suggest to Franke certain houses to burglarize, and to keep the latter advised as to the actions and efforts of the police in trying to locate the guilty parties. At the suggestion of defendant, Franke rented a room at 3740 Olive Street and lived there for a number of months with a woman named Sybil White. After Franke would burglarize a home, according to plan, he would bring the loot either to 3740 Olive Street or to the home of Mrs. Enyart, and at one or the other of these places, with defendant Cummins and usually Mrs. Enyart and Mrs. Champagne present, the plunder would be divided; that Cummins had first pick, and would select out such articles as he desired, some of which he would turn over to either Mrs. Enyart or Mrs. Champagne, both of whom were his particular friends. Quite a number of

homes were burglarized, and the stolen property, is is claimed, was divided between this defendant and the other parties above mentioned, for a period extending from December, 1915, until about the 12th of July, 1916, at which time Franke and the White woman were arrested by officers Hunt and Flavis at Grand and Olive. When they were arrested, the testimony discloses, each of them told the officers to tell "Ray" or *get word to* "Ray" and, upon inquiry, the officers ascertained that they meant *"Ray Cummins."* According to the testimony of the above officers, they reported to defendant the above remarks made by Franke and the White woman, and suggested to defendant that he ascertain their street address. Both officers said that, at defendant's suggestion, they remained some distance away while he entered into a private conversation with Franke, and reported to them that he was unsuccessful in obtaining the desired information.

Both Franke and Sybil White testified that they had an arrangement with Cummins whereby, in the event of their arrest, they would get word immediately to the defendant, and he would see that they were taken care of. The testimony discloses that defendant visited both Franke and the White woman in the holdover, and also at the jail, and sent them packages containing clothing and other articles several times. He also promised to secure a lawyer, and to see that Sybil White was released on bond. There is also evidence tending to show that defendant went to a room at 3824 Penrose Street, which was occupied by Franke and Sybil White at the time of their arrest, and took from their room several valises full of stolen property, which remained there at the time they were confined in jail. George Franke pleaded guilty to the charge made against him, and was sentenced to the penitentiary. While confined there, he testified that defendant, in company with one Crites, visited him and promised to see that he was released.

A considerable number of articles alleged in the indictment to have been stolen from the Bennett home, as well as a number of articles stolen from the homes of other people in St. Louis, were identified at the trial, as articles which Franke had turned over to the defendant, and by the latter turned over to Mrs. Enyart. A number of these articles had been recovered by the police from the Enyart home, where some of them were found hidden in a box under a trap door in the floor at that place, and some of them were recovered from pawn shops.

Mrs. Jessie E. Bennett testified as to the robbery of the Bennett property on June 5, 1916, and after enumerating the various articles stolen she gave the value of same as $442.50. Mrs. Frank S. Wiemeyer, living at 5744 Berlin Avenue, testified that about June 3, 1916, their residence was robbed of personal property estimated to be of the value of $800 or $900. It further appears that the home of Otto Dieckmann, at 5727 Clemens Street, was robbed on December 14, 1915, and various articles of jewelry, etc., were stolen, of an aggregate value of $700. David Abrams testified that his apartment at 5515 McPherson Street was robbed on December 29, 1915, of mink furs and other property of the aggregate value of about $1200. L. W. Johnson, who lived at 5794, McPherson Street, testified that his apartment was robbed on December 1, 1916, of clothing and other property of the aggregate value of $250. Mrs. John E. Avery, who lived at 4122 McPherson Street, testified that her home was robbed on January 5, 1916, and that she lost cut glass, table-linen, etc., of the aggregate value of $100. Mr. Jules D. Block, who lived at 5715 Cates Avenue, testified, that his apartment was robbed on December 5, 1915, of clothing and other property of the aggregate value of $225.

The evidence shows, that George Franke robbed the residence above mentioned of the property taken therefrom.

George Franke admitted that he had been confined in the reformatory at Boonville, and Pontiac, Illinois, and had been in the penitentiary of this State. He testified that he had been disposing of stolen goods to Mrs. Enyart at 3327 Vincent Avenue for a number of years, and that while visiting there one evening in December, 1915, he met defendant Ray Cummins, and was told by Mrs. Enyart, Mrs. Champagne and Edna Stevens, who were at the Enyart home at the time of his visit, that the defendant was a "good copper" and that he was stationed at police headquarters and would be able to help Franke out if he got into trouble. Franke further testified that defendant Cummins, at this meeting, talked with him about "all the good jobs I had been doing and about the reports coming into the place there" and assured him that he was "pretty safe" and "would tell me what neighborhood to go into when the police were not in the neighborhood," and he cautioned Franke to be careful and always "be very careful in a job, to change clothes as quickly as possible, and stay in the house." At another time, Franke testified, defendant told him to work in the district of Forest Park, Grand and Russell Avenue, around Grand and LaFayette Avenue, Hawthorne and Longfellow Boulevard, and wanted to know why "I did not go to Chief Young's residence," and later Chief Young's residence was robbed and "he kinda chided me about it because some one beat me to it." He testified that, at the suggestion of defendant, he and Sybil White moved to 3740 Olive Street to the home of Mrs. Agnes Gray, where they lived until shortly before the time of his arrest. He testified that defendant told him he was walking that beat, and if there were any reports made he could protect witness by not sending the report in right, or in not calling help if he was around, etc.

Franke admitted, on the witness stand, that he had burglarized the Bennett apartment, located at 5705 Clemens Avenue, and had secured entrance by removing the glass panel out of the front door, and, after enter-

ing, took from the apartment several shirt studs, a revolver, some beads, pearl necklace, gold watch, breast pin, umbrella, a diamond lavelier and other articles which he could not recall at the time; that, in accordance with the agreement with defendant, the latter was to get the pick out of the property stolen, and on the day of the burglarizing of the Bennett apartment he took the loot to the home of Mrs. Enyart, handed over to defendant Cummins the pearl shirt studs, the cuff buttons, chain and locket on which initials were engraved, a little chain necklace and a ring. He further testified that there were present at the Enyart home, when he brought the stolen plunder from the Bennett apartment, besides Mrs. Enyart and himself, Mrs. Champagne, Sybil White and the defendant; that he showed Cummins an account of the robbery as printed in the paper, and at the time Cummins gave him a duplicate or skeleton key, with the remark, "he thought I could use it." Franke then described the robberies of the other persons heretofore set out.

Franke testified to various meetings and conversations with defendant, in regard to the loot which had been stolen, and in both direct and cross-examination said he had made an agreement with defendant by which the latter was to designate the houses which were to be robbed, and that after robbing these places he divided the plunder with defendant, as heretofore stated.

In the brief of defendant's counsel he describes Franke as follows: "After having introduced evidence of the other burglaries referred to, the State placed upon the witness stand George Franke, then confined in the State Penitentiary upon a plea of guilty to burglaries committed in the latter part of 1915 and the first part of 1916. Franke was a professional burglar. He took an early course in crime, starting as usual with self-instruction, then entering the reform schools and from there graduating into several penitentiaries. He testified to having returned to St. Louis in December, 1915. He immediately began burglarizing houses. He

continued in this course until June, 1915, when after the Bennett robbery, referred to in the indictment, he was arrested, following which he pleaded guilty and was sent to the penitentiary. During his six months' sojourn in St. Louis he testified that he burglarized between 150 and 175 different houses. Among the houses so burglarized were the ones hereinbefore referred to.''

Mrs. Christie Scott, and her son, Charles Tilley, testified that they were introduced to Franke and Sybil White by defendant at the home of Mrs. Enyart.

William Howe, who conducted a grocery store over which Franke and the White woman lived at 3724 Penrose Street, testified that he heard some one going up the back stairs a few nights after Franke was arrested, and that the person left the rooms with a bundle under his arm. Franke testified that defendant told him about having left the place above described with the valises and goods.

Richard Kent, a chauffeur testified, that he. had driven defendant to 3740 Olive Street three times at night, and that the defendant would go to the second floor, put his head out of the window and remark, ''All right Dick,'' which was a signal for the witness that he did not desire him to wait longer.

Wm. Brinkmeyer and Thomas Combs, both of whom had been employed as waiters at Dick Campbell's cafe at Grand and Olive Streets, stated they had seen defendant at the Campbell place a number of times in company with George Franke and Sybil White.

According to the evidence of Edward Jarvis, the janitor, at police headquarters, defendant had frequently sent packages to George Franke and Sybil White while they were confined in the jail, and defendant had given him to understand that he was not to say anything about it to anybody.

According to the evidence of C. L. Ferricks, while defendant was assigned to the record room at police headquarters he had access to the records and reports

made by various policemen of burglaries and other crimes.

Sybil White testified that she commenced living with George Franke in December, 1915, and described the places heretofore mentioned where they resided. She said that she met defendant while at Mrs. Enyart's place, and that George Franke, Mrs. Enyart and defendant were together almost every night; that while living at the Olive Street address, when Franke would come in after burglarizing a home, they would divide up the stuff and give Ray and Mrs. Enyart their pick out of everything; that she had heard defendant tell Franke where to go a number of times and remarked that he would watch the police headquarters so as to notify him. She said that defendant had a key to the room where they were living and visited there almost every evening; that the plunder would be divided either there or at Mrs. Enyart's. Frequently the entire crowd would visit cabarets after the spoils had been divided. She testified that defendant visited her at the jail and assured her that he had gotten considerable of the stolen goods that was in the room at 3724 Penrose Street out of the place after their arrest.

Other testimony in behalf of the State was given along substantially the same lines.

The defendant testified, in his own behalf, that he had been a member of the police force for more than ten years and had been dismissed for taking up a collection among the police force for the purpose of defraying the expense of securing the passage of a legislative measure to increase the salary of police officers by the 1917 General Assembly, which was in violation of a rule of the police department. He admitted that he knew George Franke, and had, at the latter's request, referred him to Mrs. Gray's rooming house at 3740 Olive Street.. He said that he had frequently seen Franke while performing his duties as traffic officer at Grand and Olive, and had gone with Franke to purchase a cigar, both at the Metropolitan Store and

Campbell's Cafe, and also met him twice at Mrs. Enyart's place. Defendant, however, denied that he had ever directed Franke to any house to be burglarized, and denied that he ever received any loot or stolen plunder from him, and denied that he had an agreement of any kind to share in the fruits of his ill-gotten gains. He explained his visits to the jail, after the arrest of Franke and Sybil White, by saying that it was in response to a note which he had received from Franke, and he had sent over to them by Jarvis some old clothes so that they might present a neat appearance when taken to court. He further admitted that he frequently went to Franke's rooms at 3740 Olive Street but said that his purpose in going there was to visit Sybil White.

Davis Israel, Patrick J. Gaffney, Lawrence P. Walsh and Hugh Murphy took the stand, and each testified that the reputation of defendant for truth and veracity and as a law-abiding citizen was good.

Joseph J. Crites testified, in behalf of defendant, that he had been employed by the Police Relief Association of St. Louis, to further the interest of the bill pending before the Legislature to increase the salaries of police officers, and stated that he met defendant Cummins in Jefferson City in March, 1917, during the session of the Legislature, and that they went to the penitentiary together. He denied the conversation testified to by George Franke in respect to what occurred at the penitentiary.

The defendant, in his own behalf, denied any knowledge of Franke being a burglar until the latter's arrest; denied that he had ever received any of the stolen property which Franke said he had received; denied the testimony of Franke and Sybil White, to the effect that defendant had advised, counseled or assisted Franke, in any way, in his unlawful practices.

Defendant's evidence shows that he had been elected and re-elected several times as secretary of the Police Relief Association and had handled its money faithfully.

The character witnesses aforesaid testified that defendant had the reputation of being a good officer.

The case was submitted to the jury under the evidence and the instructions of the court. Defendant was found guilty, as heretofore mentioned and appealed the case to this court.

I. The first error assigned by appellant reads: "The court erred in admitting evidence of other burglaries than the one specified in the indictment." Under this proposition defendant cites: State v. Daubert, 42 Mo. 242; State v. Spray, 174 Mo. 569; State v. Boatright, 182 Mo. 33.

Other Crimes.

In the Daubert case, supra, the evidence, in regard to other crimes than the one designated in the indictment, is not set out. WAGNER, J., upon page 246, said: "Upon the trial of an indictment for larceny, evidence of the commission of a separate and distinct larceny from that charged is inadmissible. [State v. Goetz, 34 Mo. 85.] But where the evidence offered directly tends to prove the particular crime charged, it is to be received, although it may also tend to prove the commission of another separate and distinct offense. [State v. Harrold, 38 Mo. 496.] To admit the evidence, there must be a connection or blending which renders it necessary that the whole matter should be disclosed, in order to show its bearing on the issue before the court."

In passing upon this question, it is well to keep in mind that in the above case the State was offering to show that defendant had been guilty of other and independent crimes, while in the case at bar, the owners of the property testified as to the burglary and larceny, followed up by the testimony of Franke, the alleged accomplice of defendant, that he had burglarized the residence of said parties, stolen therefrom the plunder mentioned in evidence, and divided the same with defendant under their previous arrangement. The State was attempting to show a conspiracy between Franke and defendant which had for its purpose the commission of said burglaries and larceny, as well as the division of

the proceeds of same. Among other things the State endeavored to show that Franke had been for years a notorious burglar and thief; that defendant on account of his intimate relation with Franke, and those associated with him, must have known of the business in which he was engaged and actively aided him in pursuing same. On the other hand, the defendant's counsel examined Franke with reference to various burglaries and larcenies committed by him outside of St. Louis and outside of the State of Missouri. In other words, defendant undertook to show that Franke was such a notorious thief and burglar that no jury ought to give credence to his testimony.

Defendant's objection to this class of evidence arose in this way. The State had introduced testimony of the burglarizing of the Bennett, the Wiemeyer and the Dieckmann homes, without any evidence of the defendant's connection with the burglaries and larcenies, and without objection from defendant. When Abrams was introduced as a witness to show the burglarizing of his home, the defendant's counsel for the first time objected to the introduction of evidence relating to other burglaries than that described in the indictment, and moved to strike out that part of the testimony which did not relate to the Bennett indictment. This objection was overruled, and the State was permitted to prove that Franke committed each of said burglaries and larcenies, which were objected to, and sought to be stricken out. If the evidence thus produced by the State failed to connect defendant with these burglaries and larcenies, the admission of same did him no harm, for it furnished testimony in behalf of defendant, tending to blacken the reputation of Franke, and prove him to be unworthy of belief. If, on the other hand, after the State proved the commission of said burglaries and larcenies by Franke, there was evidence tending to show that defendant received a part of said plunder, it was for the jury to determine from all the facts and circumstances in

evidence whether it was so received by virtue of a previous arrangement with defendant.

The Spray and Boatright cases, cited by defendant, are in line with the Daubert case, supra.

The facts heretofore set out, in our opinion, sustain the action of the trial court when considered in the light of our rulings upon this subject. [State v. Lewis, 273 Mo. l. c. 530, 201 S. W. 80; State v. Patterson, 271 Mo. l. c. 109; State v. Spaugh, 200 Mo. l. c. 594; State v. Bailey, 190 Mo. 280; State v. Collins, 181 Mo. l. c. 260-1; State v. Myers, 82 Mo. 558; State v. Othick, 184 S. W. l. c. 108.]

In State v. Spaugh, 200 Mo. l. c. 594, GANTT, J., very clearly states the law of this State, in respect to above subject, as follows: "There is no doubt that it is a general rule of criminal law in this State that evidence of separate and isolated crimes cannot be given against one on trial for a specific crime, but it is equally well established in this State that proof of another crime than the one for which the defendant is on trial is competent to prove the specific crime charged when it tends to establish the motive, intent or absence of mistake or accident or the identity of the person charged with the commission of the crime on trial. [State v. Collins, 181 Mo. l. c. 260, 261.]"

In State v. Bailey, 190 Mo. l. c. 284, we said: "Hence, as already said, we think this evidence was competent to establish the identity of the defendant as the person who committed the crime; to show that it was intentional and willful, and to show that he was one of a band organized together to commit crimes of the kind charged, and to connect the offense with which he is charged in this case as a part of a common, unlawful and felonious scheme."

In State v. Othick, 184 S. W. l. c. 108, we said: "Appellant contends that the court erred in admitting over his objection the evidence as to the larceny of the Brightwell and Holmes automobiles. We are unable to agree with this contention. From the evidence it ap-

pears that the theft of these cars was but part of the 'common scheme or plan embracing the commission of two or more crimes, so related to each other that proof of one tends to establish the other.' The evidence therefore was clearly admissible. [State v. Bailey, 190 Mo. l. c. 280, 88 S. W. 733; State v. Hyde, 234 Mo. l. c. 226, 136 S. W. 316, Ann. Cas. 1912D, 191.]''

The other cases heretofore cited are in accord with above quotations. We accordingly overrule this assignment of error.

II. Appellant's second assignment of error, reads as follows: ''The court erred in admitting evidence of the burglary of the Abrams house which

Prior to Conspiracy. occurred prior to the time that Franke became acquainted with the defendant and prior to the time when it is claimed the conspiracy between Franke and the defendant was formed.''

This contention is without merit, for the following reasons: (a) The objection was made when Abrams was on the stand that it did not appear up to that time that defendant was connected with any of the burglaries, except that of Bennett's. Neither Franke, nor Sybil White, had then been examined as witnesses. The court could not anticipate at that time what the evidence would be in the way of connecting defendant with the burglaries, and properly overruled the objection then made. Now, on cross-examination of Franke, he stated that he had robbed either the Dieckmann home or the Abrams home on the same day, but before he first met defendant. After making this discovery, defendant did not then ask the court to exclude the testimony of either Dieckmann or Abrams, which had been formerly admitted, but let it stand on his original objection, which was properly overruled when made. (b) The evidence as to the Dieckmann and Abrams burglaries was competent, for the reasons stated in the preceding proposition, and because Franke testified that he divided the loot which he got from both homes, under the agreement which they made that night.

In view of the foregoing, defendant's contention, supra, was properly overruled.

III.   The third assignment of error, reads as follows: "The court erred in not requiring the State to elect at the close of the case whether it would stand upon the first count (burglary and larceny) or the second count (receiving stolen property)."

Election.

If the jury believed from the evidence that there was a conspiracy between Franke and defendant to burglarize the Bennett home and to divide the loot stolen therefrom, then the verdict reached in this case was proper. If, on the other hand, the jury had found in favor of defendant as to the conspiracy, but had been satisfied from the evidence that he had accepted from Franke the goods stolen from Bennett, knowing them to have been stolen, he might have been acquitted of the burglary and larceny, and convicted of receiving stolen property. The evidence was comprehensive enough to cover both issues and, hence, the court committed no error in refusing to sustain defendant's motion to require the State to elect, whether it would stand upon the first or second count of the indictment. It correctly declared the law, in respect to this matter, in its instruction numbered seven, which is amply sustained by the decisions of this court. [State v. Pace, 269 Mo. l. c. 686; State v. Christian, 253 Mo. l. c. 393; State v. Carragin, 210 Mo. l. c. 366; State v. Miller, 67 Mo. 604; State v. Green, 66 Mo. l. c. 644; State v. Sutton, 64 Mo. l. c. 108; State v. Daubert, 42 Mo. 242.]

The trial court was within the law in overruling defendant's motion to elect, etc., and properly informed the jurors as to their duty in respect to this subject.

IV. Defendant's fourth assignment of error, reads as follows: "The court erred in instructing the jury that it might find defendant guilty upon the uncorroborated testimony of an accomplice (in this case George Franke and Sybil Brown)." Appellant cites in sup-

Upon Testimony of Accomplices Alone.

port of above contention, State v. Wilkins, 221 Mo. 444.

We are not advised in the above assignment of error, which instruction or instructions the defendant is complaining of, but herewith set out the two given by the court, numbered nine and ten, which read as follows:

"9. The court instructs the jury that one accomplice cannot, as a witness, corroborate the testimony of another witness who is an accomplice.

"10. The court instructs the jury that they are at liberty to convict the defendant on the uncorroborated testimony of an accomplice alone if they believe the statements as given by said accomplice in his testimony are true in fact and sufficient in proof to establish the guilt of the defendant; but the jury are instructed that the testimony of an accomplice in crime, when not corroborated by some person or persons not implicated in the crime, as to matter material to the issues, that is, matters connecting the defendant with the commission of the crime charged against him and identifying him as the perpetrator thereof, ought to be received with great caution by the jury, and they ought to be fully satisfied of its truth before they should convict the defendant on such testimony."

There is nothing in the Wilkins case which is antagonistic to either of the above instructions. That numbered ten has been in terms approved by this court in State v. Bobbitt, 215 Mo. l. c. 42, where it is fully considered and the leading authorities in this State cited in support of the conclusion there reached. To same effect are: State v. Harkins, 100 Mo. l. c. 672; State v. Jackson, 106 Mo. 179; State v. Woolard, 111 Mo. 248; State v. Crab, 121 Mo. 554; State v. Dawson, 124 Mo. 422; State v. Donnelly, 130 Mo. 642; State v. Kosky, 191 Mo. l. c 9. The foregoing authorities clearly support the action of the court in giving said instructions.

V. Appellant's fifth assignment of error, reads as follows: "Instruction No. 8-A given on behalf of the

14—279 Mo.

State was erroneous, in that it assumed that
<span style="font-variant: small-caps;">Assumption of Fact.</span> other burglaries had been committed and
that this defendant had committed them, and
the court erred in giving it.'' The above instruction
reads as follows:

"8-A.   The court further instructs the jury that
evidence of other burglaries and larcenies were admitted
by the court solely for the purpose of determining
whether a conspiracy, agreement and common design ex-
isted between the defendant and one George Franke to
burglarize various dwellings in the City of St. Louis
and steal goods, wares and merchandise therefrom; and
you are to consider this evidence for no other purpose,
for you cannot convict the defendant of any other
charge than the one for which he is now on trial.''

Defendant's criticism of said instruction is not well
founded.   It does not assume "that other burglaries
had been committed and that this defendant had com-
mitted them.''   It simply told the jury "that evidence
of other burglaries and larcenies were admitted by
the court solely for the purpose of determining whether
a conspiracy'' existed between defendant and Franke.
There is nothing in the instruction which could be con-
strued as an intimation of the court's views of the
evidence adduced.   On the contrary, the jury were left
to consider this question without any expression of
opinion from the court.

The instruction properly declared the law, and is
sustained by the authorities heretofore cited under
Proposition I.

VI.   Defendant claims that the evidence was in-
sufficient to sustain a conviction.   In view of the full
statement of facts heretofore made, we do not deem
it necessary to again go over this subject as it was the
province of the jury to pass upon the facts,
<span style="font-variant: small-caps;">Sufficiency of Evidence.</span> under proper instructions of the court.   The
latter tried the case, in our opinion, with
marked ability and fairness.   The instruc-
tions covered every possible theory of the case in a

satisfactory manner, and we do not find that defendant has any just grounds of complaint as to the merits of the controversy. We are of the opinion that on the facts presented in the record, the verdict as returned was supported by the testimony and is within the purview of the law.

The judgment below is accordingly affirmed. *White* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur; *Faris, J.,* in result.