# THE STATE v. T. M. SAUNDERS, Appellant.

*In Banc, July 8, 1921.*

1  **FUGITIVE FROM JUSTICE: Duty to Surrender.** Where a proper demand has been made by the Governor of one State upon the Governor of another, the duty to surrender a fugitive is not absolute, but if the laws of the State to which he has fled have been violated and he has been convicted there and is undergoing punishment the demands of the law thus violated must be satisfied before obedience is required to the provision of the Constitution of the United States directing his surrender.

2. ————: ————: **Waiver.** Despite the prior right of a State to enforce its judgment before surrendering a fugitive who has been convicted of a crime, such State may nevertheless waive the right and deliver him to the authorities from which he has fled, and such waiver may be exercised by the Governor alone, without the concurrence of its courts, although the waiver may take the form of a parole and not of a pardon.

3. ————: ————: ————: **Parole Upon Condition.** A parole of a prisoner by the Governor of Iowa in order that he may be prosecuted for a crime in this State is in the nature of a pardon and becomes absolute upon his surrender to the authorities of this State.

　　*Held*, by GRAVES, J., with whom WOODSON and HIGBEE, JJ., concur, that the document issued by the Governor of Iowa, declaring on its face that its purpose was to "suspend the further execution of the judgment" of the district court, was neither a pardon nor a parole, but being issued on the express condition that "in case of a failure to convict" the prisoner "shall be returned to the Penitentiary of Iowa for the completion of his sentence," the Governor did not waive the right of Iowa to further punish the defendant, but the defendant was at the time of his trial and even now is, in legal fiction, an inmate of the penitentiary of that State.

4. ————: Parole Upon Condition: Bar to Prosecution: Waiver by Prisoner. The formal requirements of the Constitution of the United States, the Act of Congress and the laws of Missouri relating to fugitives from justice having been observed in securing the custody of a defendant charged with a crime in this State,

the court will not concern itself with the regularity of his release by the Governor of Iowa; and the fact that he was paroled by the Governor of that State upon condition that he would be returned to Iowa to serve out his sentence if not convicted in this State of the crime charged against him, will not avail to bar a trial for such crime. The courts of Iowa were open to him to interpose objections to his release from imprisonment by the Governor of Iowa, and not having availed himself of that privilege it will be inferred that he waived the benefit of whatever right he then had to interpose his conviction and imprisonment in that State as a bar to his prosecution for a crime previously committed in this.

5. LARCENY: Positive Proof: Instruction Concerning Other Offenses: Prejudicial. Where the offense charged is larceny and the testimony in regard to defendant's participation therein is direct, testimony as to other crimes is inadmissible, and an instruction telling the jury that evidence of other or similar offenses committed on or about the same time was admitted for the purpose of showing the intent, is erroneous, since proof of intent is unnecessary, because the act carries the intent with it; and, although the other or similar offenses were a part of the same transaction and committed in connection with it, the instruction will not be held to be harmless, since in the absence of a satisfactory showing that an erroneous instruction is harmless it will be presumed to be prejudicial.

   Held, by DAVID E. BLAIR, J., dissenting, that the instruction not only told the jury that evidence of other or similar offenses were committed was admitted for the purpose of showing the intent with which defendant acted in this case, but "for the purpose of showing or tending to show a series of offenses of the same character, as throwing light on the question of his guilt or innocence of the offense charged in the information;" and the evidence showing that defendant and another started out with a plan to steal chickens from a number of farmers, the instruction was harmless error, and if any prejudicial error was committed it was in the admission of the testimony.

6. ———: Instruction Concerning Other Convictions: Credibility: Inconsistency. Where defendant was charged with stealing chickens in the night time and testified in his own behalf, testimony that he had been convicted of chicken-stealing in Iowa and sentenced to the penitentiary was admissible to aid the jury in determining the credibility to be given his testimony, and an instruction limiting the evidence of his prior conviction to that purpose is not error. Nor is there any conflict or inconsistency between said instruction

288 Mo.—41

and another telling the jury that the evidence of other offenses could be considered only for the purpose of showing the defendant's intent in taking the chickens.

7. **INSTRUCTIONS: Refusing Defendant's.** Where the instructions given properly present the case to the jury it is not error to refuse instructions asked by defendant.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis,* Judge. .

REVERSED AND REMANDED.

*L. A. Martin* for appellant.

(1) The court erred in forcing defendant to trial before his sentence in Iowa had expired. There is no law in any civilized county allowing the Governor to lend a person to another government to be tried for a crime and yet retaining custody of the person and requiring the other government to return the prisoner if it fails to convict him. The court should have postponed the trail until the termination of his sentence in the State of Iowa. State v. Buck, 120 Mo. 479. (2) The court sustained the objection of defendant as to his being convicted of another crime in Iowa, yet permitted the prosecuting attorney to continue to ask the same questions in different words, and overruled defendant's objection to the same. The whole range of cross-examination of defendant by the prosecuting attorney, was outside the facts testified by him in his examination in chief. The court permitted the cross-examination of defendant to cover an unreasonable range about matters and subjects not noticed or testified to in his examination in chief, all tended to create a prejudice against him. This was error. State v. McGraw, 74 Mo. 573. (3) Instruction number six is a legal monstrosity. It tells the jury that the evidence of other offenses committed by defendant was admitted for the purpose of showing the intent with which the defendant acted in this case, and to throw

light on the question of his guilt or innocence of the
offense charged in the information herein and that it
must be considered for this purpose only.   State v.
Young, 119 Mo. 495; State v. Primm, 98 Mo. 368.

*Frank W. McAllister,* Attorney-General, and *J. W.
Broaddus,* Assistant Attorney-General, for respondent.

(1)   The court was possessed with jurisdiction over
the person of appellant.   The Governor of Iowa sus-
pended the further execution of the sentence imposed
on appellant by the District Court of Polk County,
honored the requisition of the Governor of Missouri
and released appellant to the authorities of this State
for trial.   This he had full power to do.   It was no con-
cern of appellant if the Governor of Iowa saw fit to
waive the right of that State to further punish him for
the offense of which he was convicted.   19 Cyc. 95; 12
Am. & Eng. Ency. Law, p. 604; People v. Hogan, 69 N.
Y. Supp. 475; Roberts v. Reilly, 116 U. S. 96; In re Hess,
5 Kan. App. 763.   (2)   The instructions given by the
court properly declared the law.   They covered every
phase of the case in a very clear manner and we cannot
see how appellant could have any just cause for com-
plaint on this score.   Instruction No. 6 properly told
the jury the purpose for which the evidence showing the
commission of other similar offenses was admitted.
State v. Gaede, 186 S. W. 1009; State v. Wilson, 223
Mo. 169; State v. Young, 266 Mo. 735.   Instruction No.
7 on the question of flight for the purpose of avoiding
arrest and prosecution has often met with the approval
of this court.   State v. Brooks, 92 Mo. 585; State v.
Lewkowitz, 265 Mo. 633.   Instruction 11 is the old in-
struction on credibility of witnesses.   State v. Hender-
son, 186 Mo. 492; State v. Hudspeth, 159 Mo. 200.   In-
struction No. 13 stating the purpose of the admission
of evidence tending to show that defendant had been
convicted of other crimes was correct.   State v. Carr,

146 Mo. 1. (3) The instructions requested by appellant were properly refused because the court had by proper instructions thoroughly presented to the jury every phase of the case, it being unnecessary to duplicate instructions. State v. Dooms, 217 S. W. 47. (4) It was proper for the State to show acts of a similar sort done by defendant in the same community at about the same time, provided the court confined the jury's consideration thereof to the issue of intent. This the court did by Instruction 6. State v. Gaede, 186 S. W. (Mo.) 1009; State v. Young, 266 Mo. 734; State v. Hyde, 234 Mo. 226; State v. Donaldson, 243 Mo. 475.

WALKER, J.—The appellant was charged by information in the Circuit Court of Livingston County, with larceny in the night time, in having stolen from the premises of their owners certain domestic fowls, in violation of Section 3314, Revised Statutes 1919. Upon a trial, he was convicted and his punishment assessed at five years' imprisonment in the penitentiary. From this judgment he appeals.

The appellant resided in that part of Chillicothe, known as Graysville; in the immediate neighborhood lived one Loney, an acquaintance and associate of the appellant. On the night of August 7, 1917, appellant came to Loney's residence, and when the latter's wife retired about 8:30 o'clock the men were sitting on the porch, talking. Loney testified that appellant suggested they go out and get some chickens. Loney had a horse and buggy, and at about ten or eleven o'clock p. m. they started out into the country in this conveyance. They took five or six gunny sacks along, in which to put the chickens. When they reached a neighborhood about five miles from Chillicothe, they hitched the horse in a meadow and took from the premises of farmers residing in the neighborhood about thirty chickens. Placing them in the buggy, they started homewards; they

were overtaken by some farmers in an automobile. These farmers passed them slowly on the road, proceeded some distance ahead and stopped to await their coming. There was but one man in the buggy when it was driven up to where the farmers were waiting. Loney was that man. He states that after the farmers passed him and the appellant, he remarked to the latter that "there is something up, we are caught." To which the appellant replied with an oath, "I'm not caught," and jumping out of the buggy disappeared in the night. Loney was taken into custody by the farmers, who took him to Chillicothe where he was placed under arrest, charged with having stolen the chickens, tried and sentenced to the penitentiary. Nothing was heard of the appellant until in July, 1918, when it was learned that he was imprisoned in the Iowa penitentiary, under a conviction for chicken-stealing in that State. When his whereabouts were discovered, application was made to the Governor of this State for a requisition for his return, which was granted and, armed with this commission, an officer went to Des Moines and presented it to the Governor of Iowa, who made an order paroling the appellant and turning him over to the officer from Missouri, conditioned that he would be returned to Iowa to serve out his sentence if not convicted in this State of the crime charged against him.

The burden of the appellant's defense is an *alibi;* and that he is being prosecuted in violation of his constitutional rights in having been tried and convicted while under sentence for a crime committed in Iowa.

According to his own testimony and that of his witnesses, at about ten or eleven o'clock on the night of Loney's arrest, the appellant, who also owned a horse and buggy, went to his boarding place, and with the assistance of a woman who resided there they hitched the pony to the buggy, and he went to Braymer, a town about twenty miles away from Chillicothe; that from there he went to Iowa, and while in the latter State he

was charged with and convicted of chicken-stealing and sent to the penitentiary. Appellant denies that he saw Loney on the night of the crime and as well his complicity therein.

As stated by Commissioner RAILEY, in his opinion in this case, in Division No. 2, there was an utter lack of compliance with our Rule 19 by counsel for appellant in his presentation of this case. Instead of a statement containing references to the pages of the transcript, with an assignment of errors and a brief of points and authorities, there is filed an argumentative narration of the facts in the case, as detailed by the witnesses for the appellant. This is followed by a discussion of the instructions, and what is termed a summary of the case. Despite these irregularities, we will endeavor to glean from the record the errors assigned, to determine if there is any merit in the appellant's contentions.

I. The parole of the Governor of Iowa, which authorized the removal of the appellant from that State to this, and his trial here, are assigned as error, in that they violate the appellant's constitutional rights in subjecting him to cruel and unusual punishment. The mistaken conclusion as to the character of appellant's injury resulting from the course pursued, is immaterial. We are still confronted with the question as to the authority for this procedure.

*Fugitive: Conviction in Another State: Parole: Waiver: Bar.*

The Constitution of the United States (Section 2, Article 4) provides that "a person charged in any State with treason, felony or other crime, who shall flee from justice and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime." The procedure necessary to the effective enforcement of this constitutional provision is found in Section 5278, Volume 3, U. S. Comp. Statutes, as follows: "Whenever the executive

authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled, to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear.''

The obvious purpose of these provisions is to render more effective the laws for the punishment of crime. The constitutional provision not being self-executing on account of its generality, Congress has, in the statute cited, prescribed the course to be pursued in carrying it into effect. To supplement this power, the Legislatures of the States of Missouri and Iowa have, as they are authorized to do when their acts are not repugnant to the Federal statute, enacted laws more definitely defining the manner in which this power is to be exercised. [Sec. 3930, R. S. 1919; Sec. 9146, Comp. Code Iowa 1919.] Obvious as is the purpose of the constitutional and statutory provisions and ample as is the procedure prescribed for their enforcement, the vexing question remains as to their application where the offender is at the time held in custody and undergoing punishment for a violation of the laws of the State to which he has fled.

After a somewhat exhaustive review of the literature on this subject, we find that while the question has not been directly ruled upon in but few cases, illuminating dicta are to be found in a number of others. This

much has been definitely settled, that where a demand is properly made by the Governor of one State upon the Governor of another, for the surrender of a fugitive, the duty so to do is not absolute and unqualified, but depends upon the circumstances of each particular case. If the law of the State in which asylum has been sought has been violated by the fugitive and he has been convicted there and is undergoing sentence, the demands of the law thus violated may be first satisfied before obedience to the constitutional provision to surrender him arises. [Taylor v. Taintor, 16 Wall. (U. S.) 366, 4 Am. Rep. 58; People v. Hagan, 69 N. Y. Supp. 475: In re Opinion Justices, 201 Mass. 609, 24 L. R. A. (N. S.) 799; Roberts v. Reilly, 116 U. S. 80; In re Hess, 5 Kan. App. 763; Kelly v. Mangum, 145 Ga. 57; Hackney v. Welsh, 107 Ind. 253, 57 Am. Rep. 101; Ex parte Marrin, 164 Fed. 631; Cozart v. Wolf, 112 N. E. (Ind.) 241; People v. Benham, 128 N. Y. S. 610; State v. Allen, 2 Humph. (Tenn.) 258.]

Despite the rule announced in these cases as to the prior right of the asylum State to enforce its judgment before surrendering the fugitive, may it nevertheless waive this right and deliver him to the authorities of the other State?

In re Opinion of Justices, supra, which was an advisory opinion given by the Justices of the Supreme Court of Massachusetts, to the Governor of that State, it was held that, while the State in which a fugitive is found may waive its right to punish him for a violation of its own laws and deliver him to the authorities of another State, this right cannot be exercised by the Governor alone; that he has no power to interfere with a judicial sentence except by pardon and that a waiver of punishment does not constitute a pardon. A different conclusion is reached in People ex rel. Gallagher v. Hagan, supra, in which it is held that it is no defense to a warrant of execution that a prisoner who has been convicted of crime in a State cannot be extradited un-

til he has served his sentence; that the Governor may waive the right of the State to punish him and grant the requisition. In the discussion of this question, the court says, at page 477:

"In the very nature of things it is desirable that the power should rest somewhere in the State to refuse to give up a prisoner until he has satisfied the claims of the State against him, or to waive the enforcement of those claims and surrender him to another State for the satisfaction of its laws. If such power did not exist, a criminal might easily evade or postpone his just punishment for the gravest of crimes committed in one State by the commission of a crime of much less magnitude in another. If a State may waive the enforcement of its claims upon a prisoner in favor of the claims of another State upon him, it becomes important to determine who is authorized to act for the State in that regard. . . . In the case of a person held for an offense against the criminal law, there are no private rights to be considered and no claims to be satisfied, except those of the State. The question whether or not those claims ought not be waived in favor of the claims of a sister State is no longer a question for the judicial, but the executive branch of the Government. Indeed, the determination of the question in the case of a prisoner convicted of crime as is the relator, rests necessarily with the Governor, for even if the court should deem it to be its duty to release a convicted prisoner from the operation of a writ of extradition, because he owed the State a term of imprisonment in consequence of his conviction, the Governor, if for any reason he deemed the extradition to be desirable, could by a pardon wipe out the conviction, the debt due the State, and the only obstacle to the enforcement of the writ. . . . Practically, therefore, it rests with the executive power of the State to determine whether a person who has committed crimes both in this State and in another should be held here to answer before he is extradited or be

extradited without considering the charge against him here, and in determining that question, the offender has no voice and will not be heard. In the present case, the Governor by issuing the writ of extradition had determined that this relator should be sent to answer for his crime in New Jersey. With his reason for that determination, the court has nothing to do.''

In Roberts v. Reilly, supra, Roberts, who was a fugitive from the State of New York, was arrested in Georgia upon an extradition warrant issued by the Governor of that State. He averred that the acts with which he was charged constituted a crime against the State of Georgia, as well as the State of New York, and, therefore, that he should be held to answer the laws of Georgia before he was sent out of that State to answer the laws of another State. This contention was overruled by the Supreme Court, which held that even in such a case it was competent for the State of Georgia to waive the exercise of its jurisdiction by surrendering the fugitive to answer to the laws of New York.

In Hackney v. Welsh, supra, a petitioner for a writ of *habeas corpus* had committed a crime in the State of Michigan, and fleeing from justice in that State voluntarily came into Indiana, where he committed another felony, for which he was indicted, convicted and imprisoned. While he was in confinement in Indiana, a warrant issued on a requisition from the State of Michigan was received by the sheriff in whose custody he then was, but he escaped from jail and fled into Ohio, whence he was brought back to the jail from which he had escaped on a warrant issued on a requisition by the Governor of Indiana. On a failure of the prosecution against him he was surrendered to the authorities of Michigan on a requisition. The court, in ruling upon his surrender, said: ''If he had not escaped it is quite clear that he could have been rightfully surrendered under the warrant issued by the Governor of this State and he was rightfully delivered to the Michigan authorities.''

In re Hess, supra, it is held that where a person is charged with the commission of an offense against two separate States and is apprehended in one of them and the law of such State has been put in force against him, it has exclusive jurisdiction of the prisoner until the demands of its laws are satisfied. If, however, the Governor of such State honors a requisition for the prisoner made upon him by the Governor of the other State and surrenders him to the demanding State, it will operate as a waiver of the jurisdiction of the asylum State.

In State v. Allen, supra, the defendant had been arrested in Tennessee, charged with murder, but while on bail was arrested as a fugitive and delivered to the Governor of Alabama. He failed to appear when his case was called for trial in the latter State. The court in an action on his bond at page 263, said: ''By the Constitution and laws of the United States, the Governor of Alabama had the right to demand Allen, and the Governor of the State of Tennessee had the power to give him up. Indeed, it would have been his imperative duty to have done so, had he not·rendered himself by the commission of crime amenable to our criminal law. This would have justified the Governor of Tennessee in detaining him until he had made satisfaction therefor; but he chose not to do so, but to surrender him. This, we think he might legally do, and the act was not one of supererogation.''

The rules announced in the cases cited in support of the action of the Governor of a State in granting a requisition under facts similar to the·case at bar, are more convincing than those urged in support of the rule announced in the Opinion of Justices; and the application of the former cannot but' prove more conducive to the effective administration of the criminal law than the latter.

While the premises stated in support of the rule as announced in the Opinion of Justices may be abstractly correct, the correctness of the conclusion deduced

therefrom is subject to question, in that it does not follow that the Governor's act was such as to require the concurrence of one of the other coordinate branches of the Government, viz., the judicial, to render it effective. The question arises, therefore, as to whether it may not properly be regarded as in the nature of a pardon. It released the appellant from the punishment he was undergoing in Iowa, in order that he might be prosecuted for an offense in Missouri. Notwithstanding the condition of this release, we are of the opinion that it became absolute upon his surrender to the authorities of this State. If so, then it was unquestionably in the nature of a pardon, and hence the objections here made to the action of the Governor must go for naught. It was so held in Re Hess, and in State ex rel. v. Hagan, supra. However, if this assignment be viewed from a wider vantage, it cannot be sustained. That appellant was a fugitive from justice in having gone into another jurisdiction while a criminal charge was pending against him here does not admit of question. The formal requirements of the United States Constitution, the act of Congress, and the laws of Missouri having been observed in securing the custody of his person by the authorities of this State, we need not concern ourselves with the regularity of his release by the Governor of Iowa. The limit of our review is confined to the validity of the charges preferred against him and the regularity of the proceedings resulting in his conviction in this State. The courts of Iowa were open to him to interpose objections to his release from imprisonment there at the time of the Governor's action. He did not see proper to avail himself of this privilege. It may be reasonably inferred, therefore, that he waived the benefit of whatever right he then had in that behalf. It has not only been held in Iowa and our own State but elsewhere, that a defendant in a criminal case may waive the benefit of a law intended for the protection of his rights. [State v. Smith, 132 Iowa, 645; Busse v. Barr, 132 Iowa, 463; State v. Mitchell, 229 Mo. 683, 138 Am.

St. 425; State v. Shellman, 192 S. W. 435; State v.
Leach, 193 S. W. 916; State ex rel. McWilliams v. Dr.
Dist., 269 Mo. 444; State v. Loesch, 180 S. W. 875;
Harris v. People, 128 Ill. 585; Comm. v. Dailey, 12 Cush.
(Mass.) 80; State v. Sackett, 39 Minn. 69; People v.
Petrea, 92 N. Y. 128; Hallinger v. Davis, 146 U. S. 314.]

II.   Numerous errors are assigned in the giving of
instructions.   Other than those to which we will make
particular reference, they conform to established pre-
cedents and were authorized by the evidence.

Instruction numbered 6 given at the request of the
State is complained of.   It is as follows:

"The jury are instructed that the only question be-
fore the jury is the guilt or innocence of T. M. Saunders
of the offense charged in the information, that is, did
Other      he or did he not feloniously, in the night time,
Offenses.   on or about the 7th day of August, 1917, at the
County of Livingston, State of Missouri, take, steal and
carry away from the premises of George W. Draper,
upon which the dwelling house of said George W. Drap-
er was situate, sixteen white Wyandotte chickens, if
any, or any other number of chickens, the property
of George W. Draper?   And the jury are instructed
that the evidence of other similar offenses committed
on or about the same time by the defendant, acting alone
or acting jointly with Joseph Loney, if the jury believe
from the evidence that other similar offenses were so
committed, was admitted for the purpose of showing
the intent, if any, with which the defendant, T. M. Saun-
ders, acted in this case, and for the purpose of show-
ing or tending to show a series of offenses of the same
character, as throwing light on the question of his guilt
or innocence of the offense charged in the information
herein, and must be considered by the jury for this pur-
pose only, and unless the jury find from the evidence
that the said T. M. Saunders did commit the offense
charged in this case, as defined in these instructions,
they are to find him not guilty."

The offense charged is larceny.   The evidence on the part of the State was direct in regard to the appellant's participation in the crime.   Under such circumstances, testimony as to other crimes was inadmissible and the instruction was erroneous in not confining the issue to relevent facts.   We held in State v. Spray, 174 Mo. 569, that where the testimony establishes the commission of a larceny, proof of intent is unnecessary, because the act carries the intent with it.   In the Spray case, the various rulings of this and other courts are reviewed and the conclusion reached that such testimony as that upon which the instruction under review is based, was inadmissible.   In the later case of State v. Cummins, 279 Mo. 192, the admissibility of testimony of other offenses is again discussed and it is held that such testimony is not admissible in larceny cases, there being no reason for proof of motive or intent or the showing of mistakes or accident, or the identity of the person charged with the commission of the crime. These essentials to a conviction being present, the instruction was erroneous.

We are personally inclined, as we were in the disposition of this case in Division No. 2, to hold that the giving of the foregoing instruction was not such error as to be prejudicial to the appellant.   The offense charged laid the ownership of the chickens stolen in one of the several owners of the chickens found in the possession of Loney the night of his arrest, after the flight of the appellant.   All of these chickens were taken in the same raid upon the hen roosts of a neighborhood and the ''other offenses'' testified to and to which the instruction had reference were those committed on this occasion.   While this instruction was, therefore, technically erroneous in being based upon inadmissible testimony, the ''other or similar offenses'' to which it had reference were, in reality, a part of the same transaction; the testimony in regard thereto was, therefore, almost inseparably connected with that in regard to the

crime charged and it is difficult to see how the appellant could have been injured by its introduction and the giving of the instruction. ·

However, my associates differ with me in this regard, holding, in this case at least, that in the absence of a satisfactory showing that an erroneous instruction is harmless, it will be presumed to be prejudicial to the party against whom the error is committed.

Instruction numbered 7, given at the request of the State, defines the presumption arising · from proof of flight. This instruction as given has frequently been approved by this court and there is no merit in the objection urged thereto. [State, v. Brook, 92 Mo. 1. c. 585 and cases; State v. Lewkowitz, 265 Mo. 1. c. 633; State v. Topalovacki, 213 S. W. 1. c. 105.]

*Flight.*

Error is assigned in the giving of instruction numbered 13, which is as follows:

"The jury are instructed that the evidence offered tending to show that defendant has been convicted of other crime or crimes, was admitted solely for the purpose of aiding the jury in determining the weight and credibility to be given to the testimony of defendant, and should be considered by the jury for that purpose alone, and such testimony should not be considered by the jury as any evidence of defendant's guilt of the crime with which he here stands ·charged."

*Other Convictions.*

Appellant was a witness in his own behalf. It was shown by his testimony that he had been convicted of chicken-stealing and sentenced to the penitentiary in Iowa. This testimony was admissible to aid the jury in determining the credibility to be given to appellant's testimony and its purpose was so limited in the instruction. The latter, therefore, was not error. [State v. Carr, 146 Mo. 1; State v. Boyd, 178 Mo. 1. c. 13; State v. Vaughan, 199 Mo. 108.]

Properly interpreted, there is no conflict or inconsistency, as contended by the appellant, between this instruction and that numbered 6, which we have reviewed.

The latter had reference to testimony of the commission of other offenses for the purpose of showing intent; the former to testimony of a prior conviction to affect the credibility of the accused.

There was no error in the refusal of instructions asked by the appellant. Those given properly presented the case to the jury, and others were, therefore, not necessary. [State v. Shellman, 192 S. W. 435; State v. McWilliams, 267 Mo. 437; State v. Rose, 271 Mo. 17; State v. Dooms, 217 S. W. 47.]

Other assignments are without merit, and hence have not been reviewed.

The error noted necessitates a reversal and remanding of this case and it is so ordered. *Elder, J.,* concurs; *James T. Blair, C. J.,* concurs in result; *Graves, J.,* concurs in result in separate opinion; *Higbee* and *Woodson, JJ.,* concur in separate opinion of *Graves, J.; David E. Blair, J.,* dissents in separate opinion.

GRAVES, J. (concurring.)—I cannot concur fully in the present opinion I agree with my brother that the Governor of Iowa could waive the rights of that State in the matter of the further punishment of defendant Saunders, and that the weight of authority is against the ruling of the Supreme Court of Massachusetts upon that question. My disagreement is on the facts of the case pertaining to this point. As I read the record, the Governor of Iowa has never waived such right, and in legal fiction, Saunders was an inmate of the Iowa Penitentiary at the time of his trial, and even so now. The document issued by the Governor of Iowa is a legal curiosity, and should be preserved. The pertinent part reads:

"KNOW YE, That by virtue of authority in me vested by law, and for good and sufficient reasons to me appearing, I, W. L. Harding, Governor of the State of Iowa, in the name and authority of the people thereof, do hereby SUSPEND the further execution of the judg-

ment of the District Court of Polk County, whereby T. N. Saunders, No. 11268 State Penitentiary, was, at the September Term, A. D. 1917, sentenced to imprisonment in the Penitentiary at Fort Madison for a term of two years, for the offense of LARCENY OF POULTRY.

"This suspension of sentence is granted upon the recommendation of the Board of Parole and is for the purpose of releasing the prisoner to the authorities of Livingston County, State of Missouri, for trial under pending indictments, it being expressly understood that the State of Missouri assumes all expense of his removal and in case of failure to convict the said T. M. Saunders shall be returned to the Penitentiary of this State for the completion of his sentence, such return to be without expense to this State.

"The Governor of the State may for cause revoke the foregoing and direct the further execution of the sentence, or make other or further order in the case, or modification thereof."

The Governor of Iowa, by this document never waived any rights of his State. It is neither a pardon nor a parole. He calls it neither. He calls it a suspension of a court judgment, a matter not within executive power. Counsel for the defendant said on oral argument that this instrument evidenced "a mere loan of the defendant to the State of Missouri by the State of Iowa for the purposes of the present prosecution." To my mind this properly names the written document from the distinguished Governor of Iowa, who has added to legal lore by the novelty of the instrument before us. On the facts, I cannot concur to that portion of my brother's opinion which rules that the Governor had waived the rights of the State of Iowa. How this may effect the future conduct of the case, I need not discuss at this time.

As to instruction No. 6, I have no doubt that it is both erroneous and prejudicial, and so record myself. Error is presumed to be prejudicial, and the record taken

288 Mo.—42

as a whole does not overcome such presumption. With this view, my concurrence is in the result of my learned brother's opinion.

*Woodson* and *Higbee, JJ.*, concur in these views.

DAVID E. BLAIR, J. (dissenting).—I concur in that portion of the majority opinion holding that the prosecution is not barred by the terms of the order of the Governor of Iowa in releasing defendant to the authorities of this State for prosecution in this State. In a proceeding to determine the right of the Iowa authorities to return defendant to that State some very interesting questions may be raised as to the effect of such order. Those questions are not involved here.

I am of the opinion that the giving of instruction six is not reversible error. I do not think that proof of other crimes was proper *to show intent,* but the evidence of such other crimes was admissible in this case because it tended to show a series of crimes committed as part of one transaction. If defendant and Loney started out with a plan to rob the hen roosts of a number of farmers as part of one complete plan or scheme, the State should be permitted to show everything that transpired, including the commission of crimes other than the one specifically charged in the information. Instruction six told the jury the purpose of admitting such testimony was to show intent and *to show a series of offenses* of the same character as throwing light on the question of the guilt or innocence of defendant of the crime charged in the information. Such evidence was not admissible on the question of intent under the facts in this case, but was admissible to show a series of offenses as part of one general plan. In my judgment this instruction, if erroneous, was harmless error. If error was committed, it was in the admission of the testimony, not in the giving of the instruction telling the jury the purpose of the admission of such testimony. I therefore dissent.